EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Alba Nydia Ortiz Rivera<br><br>    Recurrida<br><br>             v.<br><br>Puerto Rico Telephone Company<br>Telephone Technology System, Inc.<br><br>    Peticionaria | Certiorari<br><br>2004 TSPR 133<br><br>162 DPR \_\_\_\_ |

Número del Caso: CC-2003-235

Fecha: 10 de agosto de 2004

Tribunal de Circuito de Apelaciones:

                Circuito Regional II

Juez Ponente:

                Hon. Pierre Vivoni del Valle

Abogada de la Parte Peticionaria:

                Lcdo. Neddie Feliciano Jiménez

Abogados de la Parte Recurrida:

                Lcdo. Juan E. Nater Santana

Materia: Incumplimiento de Contrato y Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Alba Nydia Ortiz Rivera

    Recurrida

     v.               CC-2003-235   Certiorari

Puerto Rico Telephone Company
Telephone Technology System,
Inc.

    Peticionaria


Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO


San Juan, Puerto Rico, a 10 de agosto de 2004.

> "Ahora bien, el fundamento de la justicia es la buena fe, es decir, la fidelidad y la veracidad en las palabras y en los compromisos contraídos. Por eso, aunque ello pueda parecer un tanto duro a alguno, osemos no obstante imitar a los estoicos, que averiguan con cuidado de dónde proceden las palabras y creamos que la buena fe *(fides)* ha sido llamada así a causa de la frase «que se haga *(fiat)* lo que se ha dicho *(dictum)*»." Cicerón, <u>Los Deberes: Libro Primero</u>. (Traducción de Francisco Samaranch)

Nos corresponde resolver si una carta enviada por la compañía Telephone Technology Systems, Inc., constituyó una declaración unilateral de voluntad que tuviera el efecto de obligarla a actuar conforme a lo expresado en ella. En la eventualidad de que resolviéramos que la referida carta tuvo el efecto de vincular a dicha compañía, debemos resolver cuál es el

término de prescripción aplicable para ejercitar la acción en reclamo del cumplimiento de dicha obligación.

I

En 1996, la Puerto Rico Telephone Company (en adelante, "PRTC") contrató los servicios de la aquí peticionaria, Telephone Technology Systems, Inc. (en adelante, "TTS" o "la peticionaria"), para la instalación de unas nuevas líneas telefónicas en la urbanización Miraflores (en adelante, "Miraflores"), ubicada en el Municipio de Bayamón.

El 24 de julio de 1996, TTS envió una carta a los residentes de los bloques 4, 20, 21, 22, 23 y 24 de la referida urbanización, para anunciarles que estaría realizando las instalaciones de las nuevas líneas telefónicas. En ésta, además, TTS les indicó que repararía cualquier daño que sufrieran sus propiedades como consecuencia de las labores que realizara. El texto literal de este documento es el siguiente:

24 de julio de 1996

A:   Vecinos de los Bloques 4, 20, 21, 22, 23 y 24
     Urb. Miraflores, Bayamón

Ref: Realización de trabajos en sus propiedades.

Sirva la presente para informarles que nuestra compañía Telephone Technology Systems, Inc., Contratista de la Telefónica está realizando trabajos de cambio de líneas telefínicas [**sic**] en sus propiedades según las especificaciones de la P.R.T.C.

**Cualquier daño a sus propiedades será repuesto por nosotros.**

Para cualquier información adicional pueden comunicarse al 797-4140 con este servidor.

Atentamente,

José L. Lugo
Coordinador

La señora Alba Nydia Ortiz Rivera (en adelante, "recurrida") es residente de la propiedad número 9 del Bloque 24 de Miraflores. Según la recurrida, como resultado de las excavaciones que TTS realizó, el talud de la parte posterior de su residencia fue cediendo paulatinamente, lo que provocó que la verja construida en esa área se agrietara.

El 16 de octubre de 1997, conforme a la declaración emitida por TTS, la recurrida le envió una carta a dicha compañía reclamándole una indemnización por los daños sufridos en su propiedad.

Al no obtener respuesta alguna de TTS, el 17 de mayo de 2001, la aquí recurrida presentó una demanda en contra de ésta y la PRTC, ante el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, "TPI"). En ésta, solicitó $17,000.00 para la reparación del talud y de la verja, más $25,000.00 por concepto de angustias mentales.

El 21 de enero de 2002 y el 19 de marzo de 2002, TTS y PRTC, respectivamente, contestaron la demanda. En esencia, negaron que los daños a la propiedad de la aquí recurrida hubiesen sido causados por las excavaciones y cambios de líneas realizados. Asimismo, ambas compañías

negaron que la recurrida les hubiese requerido reparación o indemnización alguna por el área afectada.

Posteriormente, mediante mociones separadas, tanto PRTC como TTS solicitaron la desestimación de la demanda interpuesta en su contra. Alegaron, en esencia, que los hechos que motivaron la demanda ocurrieron en el año 1996, por lo que al tratarse de una reclamación en daños y perjuicios al amparo del Artículo 1802 del Código Civil, 31 L.P.R.A. §5141, la reclamación de la peticionaria estaba prescrita toda vez que fue presentada cinco (5) años más tarde. Señalaron, además, que aun considerando la carta enviada por la peticionaria el 16 de octubre de 1997 como una reclamación extrajudicial, el término prescriptivo ya había transcurrido en su totalidad.[1]

El 28 de mayo de 2002, la aquí recurrida se opuso a la moción de desestimación presentada por TTS, y argumentó, *inter alia*, que la promesa de indemnización que dicha compañía realizara configuró la existencia de una obligación contractual a la cuál le era aplicable el término prescriptivo de quince (15) años contemplado en el Artículo 1864 del Código Civil, 31 L.P.R.A. §5294.

Sin embargo, dicho planteamiento no fue acogido por el TPI, el cual el 18 de octubre de 2002, emitió una

---

[1] Del expediente de este Tribunal se desprende que, el 19 de marzo de 2002, el TPI emitió una Sentencia Parcial teniendo por desistida con perjuicio la demanda en contra de PRTC, debido a que la peticionaria reconoció en sala abierta que su reclamación contra PRTC estaba prescrita.

Sentencia desestimando con perjuicio la reclamación de la recurrida por entender que estaba prescrita.

En desacuerdo con el foro primario, el 5 de diciembre de 2002, la aquí recurrida presentó un recurso de apelación ante el entonces Tribunal de Circuito de Apelaciones (en adelante, "TA"). Básicamente esbozó los mismos argumentos que había planteado en su oposición a la moción de desestimación.

Mediante Sentencia de 7 de marzo de 2003, el TA revocó el dictamen del TPI y resolvió que TTS asumió válidamente una obligación a través de una declaración unilateral de voluntad, lo que dio lugar a la creación de una relación jurídica de naturaleza contractual entre las partes, y a la cual le era de aplicación el plazo de 15 años contemplado en el Artículo 1864 del Código Civil, *supra*.

Inconforme con el curso decisorio del TA, el 1 de abril de 2003, TTS presentó ante nos una petición de *certiorari*, en la que formuló los siguientes señalamientos de error:

> 1. Erró el Honorable Tribunal de Apelaciones al aceptar planteamientos que no fueron alegados en el Tribunal de Primera Instancia.

> 2. Erró el Honorable Tribunal de Circuito de Apelaciones al concluir que una manifestación unilateral de voluntad da lugar a una relación jurídica de naturaleza contractual y el término prescriptivo es de quince (15) años.

Mediante Resolución de 6 de junio de 2003, expedimos el presente recurso. Contando con el beneficio de la

comparecencia de ambas partes, estamos en posición de resolver.

## II

En su primer señalamiento de error, la peticionaria alega, *inter alia*, que si bien la recurrida planteó ante el TA que la obligación asumida por TTS constituía una declaración unilateral de voluntad, así no lo hizo ante el TPI. En la alternativa, aduce que la carta enviada a los vecinos de Miraflores no constituyó una declaración unilateral de voluntad.

Respecto al primer planteamiento, concluimos que éste carece de méritos toda vez que el TPI, en su sentencia, determinó que la reclamación de la recurrida estaba prescrita, lo que implica necesariamente que dicho foro pasó juicio sobre la naturaleza de la obligación, independientemente de que la recurrida lo hubiese alegado. Por tanto, al tratarse de un error en la interpretación del derecho, el TA estaba facultado para revisar la actuación del foro primario.

En reiteradas ocasiones, hemos resuelto que los tribunales deben conceder lo que en derecho proceda, aunque ello no haya sido perfectamente solicitado. Los foros judiciales debemos hacer lo que esté a nuestro alcance para que los casos se resuelvan en sus méritos. *Soto López v. Colón*, 143 D.P.R. 282, 291 (1997); *Morales Mejías v. Met. Pack. & Ware. Co.*, 86 D.P.R. 3 (1962); *Dávila v. Valdejully*, 84 D.P.R. 101 (1961).

Resuelto lo anterior, entramos a considerar el asunto neurálgico del caso de autos. Esto es, si bajo las circunstancias específicas de este caso la carta enviada por TTS constituyó una declaración unilateral de voluntad que tuviera el efecto de vincularla. Veamos.

En nuestro ordenamiento jurídico, la declaración unilateral de voluntad es reconocida como fuente de obligaciones. Mediante ésta, una persona puede obligarse, por su sola voluntad (sólo consultando sus intereses y deseos), a dar, hacer o no hacer alguna cosa a favor de otra persona, siempre y cuando su intención de obligarse sea clara (no sea ambigua ni dudosa), surja de un acto jurídico idóneo, y no sea contraria a la ley, la moral ni al orden público. *Ramírez Ortiz v. Gautier Benítez*, 87 D.P.R. 497, 521 (1963).

Desde *Ramírez Ortiz v. Gautier Benítez*, supra, este Tribunal reconoció que el auge y tráfico comercial ameritaban que se reconociera la posibilidad de dar plena eficacia a una serie de situaciones en las que una sola persona pretendía obligarse, tal como es el caso de la declaración unilateral de voluntad. En esa ocasión, delineamos los elementos constitutivos de esta importante figura.

Se trataba en aquella ocasión de un accidente en una carretera, donde el hermano y empleado de un contratista atropelló al señor Ramírez Ortiz (demandante), quien pretendía cruzar una avenida mientras empujaba un carrito de mano. Como resultado del accidente, el señor Ramírez

Ortiz sufrió serias lesiones, las que provocaron que se le realizaran varias transfusiones de sangre. Al no contar con suficientes medios económicos para sufragar los gastos de hospitalización, un amigo del demandante le solicitó dinero al señor Gautier Benítez (demandado). Al ser inquirido, el demandado alegadamente manifestó, luego de donarle veinte dólares y llamar a su aseguradora para que atendiera el asunto, que se hacía responsable por todos los daños y perjuicios que sufriera Ramírez Ortiz.

Posteriormente, el señor Ramírez Ortiz presentó una demanda, por daños y perjuicios, ante el TPI. Luego de evaluar las posiciones de ambas partes, el TPI concluyó que la declaración unilateral realizada por el señor Gautier Benítez lo obligaba a compensar todos los daños que el demandante sufrió como consecuencia del accidente. Inconforme, el señor Gautier Benítez acudió ante nos. Este Tribunal revocó la sentencia emitida por el foro primario, y **concluyó que las declaración del señor Gautier Benítez era <u>insuficiente</u> para dejar establecida una obligación unilateral vinculante toda vez que de ésta no surgió su clara intención de obligarse.**

Al así resolver, recalcamos que la declaración unilateral de voluntad que se estima vinculante es **"la promesa o expresión de voluntad unilateral por la que nos imponemos la firme obligación de dar, hacer, o no hacer alguna cosa en provecho de otro, capaz de conferir a éste el derecho a exigir su cumplimiento o el de resarcirse de los consecuentes daños y perjuicios que hubiere sufrido**

**por los que hiciese en vista de dicha promesa y realmente inducido por ella."** *Id.* a la pág. 501. A esos fines, expresamos que:

> [n]ada impide en nuestro ordenamiento jurídico, siempre que no sea contrario a la ley, a la moral ni al orden público, **que una persona, con capacidad plena para obrar y en ánimo de obligarse por su propio convencimiento y resolución firme, pueda quedar en derecho vinculada, sólo mediante su indubitada declaración de voluntad unilateral, a dar, hacer o no hacer alguna cosa posible a favor de otra persona**.
>
> Desde luego, tratándose de una obligación simple, sin causa típica, sin condición, contrapartida o contraprestación que la compense, a veces de pura beneficencia, puede resultar excesivamente oneroso para el promitente su cumplimiento. **La obligación debe derivarse de un acto jurídico idóneo para producirla. No debe existir ni incertidumbre ni en la forma en que se expresa la declaración ni en su sustancia o contenido**.
>
> ...
> **Una vez ligado firmemente el promitente a hacer buena su promesa, debe cumplirla al tenor de la misma, quedando sujeto**, desde luego, en caso de proceder a su cumplimiento con dolo, negligencia o morosidad, o de contravenirla de cualquier modo, **a la indemnización de los daños y perjuicios causados, con arreglo a lo dispuesto en el Artículo 1054 de nuestro Código Civil**, que se refiere a toda clase de obligaciones cualquiera que sea su origen.

De las anteriores expresiones, podemos colegir que para que una declaración unilateral sea vinculante deben concurrir los siguientes elementos: (1) la sola voluntad de la persona que pretende obligarse; (2) que dicha persona goce de capacidad legal suficiente; (3) que su intención de obligarse sea clara; (4) que la obligación tenga objeto; (5) que exista certeza sobre la forma y el

contenido de la declaración; (6) que surja de un acto jurídico idóneo; y (7) que el contenido de la obligación no sea contrario a la ley, la moral ni el orden público.

Si concurren estos requisitos, la declaración unilateral de voluntad vinculará al promitente desde el momento en que la efectúa. Si bien la aceptación del acreedor será indispensable para el nacimiento del derecho de crédito, no lo será para la formación de la obligación. *Véase* Antonio Hernández Gil, <u>Derecho de Obligaciones</u>, Madrid, 1960, a las págs. 246-255; Luis Diez-Picazo y Antonio Gullón, <u>Sistema de Derecho Civil</u>, Tecnos, 3era ed., 1982, a las págs. 144-147; Rojina Villegas, *op.cit.* , a las págs 421 y ss.; Worms, *De la volonté unilatérale*, a las págs. 5 y 198.

Asimismo, conforme a lo establecido en el Artículo 1054 del Código Civil, el declarante quedará sujeto a indemnizar los daños y perjuicios que provoque a raíz de su incumplimiento.

En el caso de marras, la peticionaria argumenta que, a pesar de que en *Ramírez Ortiz*, supra, este Tribunal reconoció la declaración unilateral de voluntad como fuente de obligaciones, nuestros pronunciamientos en *Cervecería Corona, Inc. v. Tribunal Superior*, 99 D.P.R. 698 (1971), revocaron lo allí expresado. No tiene razón. Veamos.

En *Cervecería Corona*, supra, una unión de músicos, conocida como la APATE, pretendía cobrar ciertas cuotas dinerarias con motivo de la presentación de un cantante

no residente en nuestra isla. La unión fundamentó su pretensión en el reglamento del gremio. Para reclamar su alegada acreencia, la APATE presentó una demanda sobre sentencia declaratoria ante el Tribunal Superior contra el artista Tom Jones, Abraham Peña, el empresario Jack Hooke y la Cervecería Corona Incorporada, quien era agente del cantante en Puerto Rico. Alegó, en esencia, que todo artista no residente en Puerto Rico que celebrara un concierto en la isla venía obligado a pagar unas cuotas a la referida unión.

El Tribunal Superior, luego de analizar un contrato suscrito entre Cervecería Corona, Inc. y la empresa del señor Jack Hooke, el cuál no contenía estipulación alguna a favor de la APATE, acogió el argumento de los demandantes y resolvió que la Cervecería Corona, Inc. venía obligada a pagar a la APATE las cuotas de su representado en Puerto Rico. Inconforme, Cervecería Corona acudió ante este Tribunal mediante recurso de *certiorari*.

Luego de evaluar la comparecencia de ambas partes, este Tribunal revocó el dictamen revisado, y concluyó que la obligación cuyo cumplimiento reclamaba la APATE no nacía de disposición legal alguna ni del contrato suscrito entre Cervecería Corona y el señor Jack Hooke. Al disponer del asunto expresamos que:

> Hasta donde sabemos no conocemos ley que obligue a los artistas extranjeros a pagar cuota o contribución alguna a la APATE y por otro lado, el precedente de que en ocasiones anteriores otros artistas

extranjeros le hayan pagado cuotas, no es en derecho fuente de obligaciones. **<u>Si la obligación surge de disposiciones estatutarias o reglamentarias promulgadas por la propia APATE; entonces es de aplicación el postulado jurídico de que nuestro Código Civil no reconoce ni reglamenta la declaración unilateral de voluntad como fuente de obligaciones</u>**. Ramírez Ortiz v. Gautier Benítez, 87 D.P.R. 497 (1963).

Sobre este pronunciamiento, el cual ha causado confusión en la doctrina puertorriqueña, debemos aclarar que el mismo no tuvo como propósito negar la existencia de la declaración unilateral de voluntad como fuente generadora de obligaciones en nuestro ordenamiento.

Si se analizan dichas expresiones, en el contexto de los hechos del referido caso, vemos que lo que este Tribunal concluyó fue que la declaración que hiciera la APATE no constituía el tipo de declaración unilateral al que se le reconoce fuerza vinculante en nuestro ordenamiento. Nótese que en *Cervecería Corona*, supra, quien hizo la declaración fue el supuesto acreedor (la APATE), quien pretendía que el imputado deudor (Cervecería Corona) se obligara al pago de una obligación que no había asumido. Como bien señala el profesor Vélez Torres "[é]sta no es la declaración de voluntad a la que se refiere la doctrina como fuente de obligación... **En este caso el declarante quiso imponer unilateralmente una obligación a un sujeto que no la aceptó ni reconoció como tal. <u>Un propósito totalmente opuesto y ajeno a la figura de la declaración unilateral de voluntad como fuente de obligación del declarante frente a otro, que por su sola</u>**

**emisión, lo convierte en su deudor**." José Ramón Vélez Torres, Derecho de Obligaciones, 2da. ed, (revisada por Migdalia Fraticelli Torres), San Juan, 1997, a las págs. 43-44. De esta forma, concluimos que lo resuelto por este Tribunal en el referido caso no tuvo el alcance de negar la existencia de la declaración unilateral de voluntad como fuente de obligaciones.

Lo anterior quedó confirmado, en *International General Electric v. Concrete Builders*, 104 D.P.R. 877 (1976), oportunidad en la que este Tribunal se reafirmó en la fuerza vinculante de la declaración unilateral de voluntad, y citando con aprobación al tratadista español Puig Brutau **expresó que lo declarado unilateralmente pudo haber incidido en la conducta ajena y en la medida en que haya sucedido así puede ser necesario proteger la confianza depositada en la apariencia.** En esa ocasión, este Tribunal expresó que **no reconocer la obligación que genera la manifestación unilateral de voluntad también se puede interpretar como una conducta de proceder en contra de los actos propios**. A esos fines, este Tribunal expresó que:

> [e]n la construcción jurídica autónoma que da contorno a la norma de no ir contra los propios actos el efecto se produce de un modo objetivo, en el cual para nada cuenta la verdadera voluntad del autor de los actos. Se protege la confianza que estos actos suscitan en los terceros, **porque venir contra ellos constituiría obviamente un ataque a la buena fe. Cuando se impide que una persona vaya contra sus propios actos, se deja por completo de lado toda la doctrina de la declaración de voluntad para**

**imponer directamente un efecto jurídico.**"
*Id*., a la pág. 876-877.

En esta ocasión, **para reafirmar la obligación que genera una declaración unilateral de voluntad**, este Tribunal adujo como fundamento que la confianza depositada por la persona que creyó en la declaración era una razón más para sostener la validez de la misma.[2] De esta manera, este Tribunal concluyó que cuando una persona emite una declaración unilateral de voluntad, ello genera un estado de derecho sobre el cual descansan terceras personas. Cuando ello sucede, es necesario proteger la confianza generada ya que a nadie le es lícito ir ni obrar contra sus propios actos.

Para finalizar, debemos advertir que el que declara unilateralmente su voluntad, en ánimo de quedar obligado, puede retirar la manifestación efectuada de la misma forma en que la emitió. Dicho en otras palabras, si la declaración unilateral de voluntad se hizo mediante una carta escrita, el manifestante deberá retirar la promesa mediante carta escrita también. Nos dice Vázquez Bote, que para que una declaración unilateral no se estime vinculante tiene que haber una "comunicación del voluntariamente obligado cancelando o alterando su oferta inicial." Eduardo Vázquez Bote, <u>V Tratado Teórico, Práctico y Crítico de Derecho Privado Puertorriqueño:</u>

---

[2] En dicho caso, este Tribunal determinó que lo expresado en una carta de crédito constituyó una declaración unilateral de voluntad, cuyos términos "eran dignos de la confianza del suplidor que ninguna razón tenía para dudar de la buena fe de la representación que se le hacía." Id. a la pág. 876.

<u>Derecho de Obligaciones</u>, Equity, New Hampshire, 1991, a la pág. 101-102. Por igual criterio se decanta Puig Brutau quien postula que la "promesa unilateral es revocable, si se puede dar a la revocación la debida publicidad, antes de que cuantos pudieron confiar en ella hayan realizado, en todo o en parte sustancial, los actos exigidos por el promitente." Puig Brutau, *op.cit.*, a la pág. 65.

Conforme a este marco jurídico, procede que resolvamos la primera controversia ante nuestra consideración.

### III

Al examinar los hechos del caso de autos, vemos que TTS le envió una carta a los residentes de Miraflores, mediante la cual clara e indubitadamente se obligó a responder por cualquier daño que le causara a las residencias de éstos durante el proceso de instalación de las nuevas líneas telefónicas. De dicha misiva surge, sin reservas mentales de ningún tipo, su intención de obligarse al expresar que "[c]ualquier daño a sus propiedades será repuesto por nosotros." Esa declaración no adolece de ambigüedad ni incertidumbre alguna.

De igual forma, la obligación surge de un acto jurídico idóneo y no es contraria a la ley, la moral ni el orden público. Asimismo, TTS no revocó la declaración realizada, pues no envió posteriormente una misiva en la cual se retractara de la obligación originalmente contraída ni le brindó a la retractación la debida

publicidad. Por tanto, al concurrir todos estos elementos, resulta forzoso concluir que TTS quedó obligada por su sola declaración.

Por otro lado, dicha declaración generó confianza en los residentes afectados, quienes aceptaron que se realizaran las referidas obras. En específico, la recurrida estuvo conforme en que se realizara la construcción, a pesar de los daños a que estaba expuesta a sufrir su propiedad. La buena fe y la seguridad que debe permear en el tráfico jurídico nos obligan a reconocer el carácter obligatorio de este tipo de promesa.

Como adelantáramos previamente, en el caso de marras, la obligación surgió del contenido de la carta suscrita por TTS. No es relevante a la controversia de autos si ocurrió un acto ilícito (el cual fue posterior a la declaración), o si se concretó una obligación contractual entre el causante del daño y el perjudicado tal como concluye el TA.

Distinto a *Ramírez Ortiz v. Gautier Benítez*, supra, donde la intención de obligarse del señor Gautier Benítez no quedó claramente reflejada, en el presente caso, no albergamos dudas de que TTS, por su sola voluntad, se comprometió válida y legalmente a reparar todos los daños que causara mientras instalaba las nuevas líneas telefónicas. El medio utilizado (la carta) fue uno adecuado, y su omisión de no satisfacer la alegada pretensión (derecho de crédito) de la recurrida, le

expuso a que se incoara en su contra la acción contemplada en el Artículo 1054 del Código Civil, que se refiere a toda clase de obligaciones cualquiera que sea su origen.[3]

Habiendo resuelto este asunto, pasemos a la consideración del segundo señalamiento de error.

IV

Nos corresponde ahora determinar cuál es el término prescriptivo aplicable a la acción en reclamo de obligaciones cuya fuente es la declaración unilateral de voluntad.

En el caso de autos, el TA concluyó correctamente que a la obligación contraída, mediante una declaración unilateral de voluntad, le era aplicable el término prescriptivo de quince años dispuesto en el Artículo 1864 del Código Civil, *supra*. Sin embargo, su raciocinio erróneamente descansó en que la declaración unilateral de voluntad dejaba establecida una obligación contractual exigible. Veamos.

A diferencia del contrato, el cual requiere bilateralidad en cuanto a las partes y un concurso de voluntades entre éstas, la declaración unilateral de voluntad no exige ningún acuerdo; es producto de una

_____

[3] El texto literal del referido Artículo lee de la siguiente manera:

Quedan sujetos a la indemnización de los daños y perjuicios causados, lo que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los de cualquier modo contravinieren al tenor de aquéllas.

voluntad aislada, y es unilateral en su formación y en sus efectos; **por tanto, no podemos equipararla a una obligación de naturaleza contractual**. Tampoco constituye una oferta de contrato, toda vez que la declaración unilateral no requiere de aceptación para que se perfeccione la obligación. Nos dice Hernández Gil, I Derecho de Obligaciones, Madrid, 1960, a la pág. 253, que "[l]a ejecución por una persona del acto delineado en la promesa **<u>no actúa como perfección de un contrato</u>**-sólo posible si aquélla se mantuviera-, sino como realización del supuesto de hecho que dota de efectividad a la promesa, **<u>vinculante desde el principio</u>**, **y determina quién es, en concreto, el acreedor**." A raíz de lo anterior, resulta forzoso concluir que desde *Ramírez Ortiz v. Gautier Benítez*, supra, nuestro ordenamiento ha reconocido a la declaración unilateral de voluntad como una fuente autónoma de obligaciones, sumándose a las otras fuentes enumeradas en el Artículo 1042 del Código Civil, 31 L.P.R.A. § 2992.[4]

Aclarada ya la naturaleza independiente y autónoma de la declaración unilateral de voluntad como fuente de las obligaciones, pasemos a analizar el período de prescripción aplicable a las acciones que emanan de estas situaciones.

---

[4] El texto del citado Artículo dispone que:

Las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia.

Para determinar cuándo prescribe la obligación que surge de una declaración unilateral de voluntad debemos acudir a nuestro Código Civil. Como se sabe, la prescripción de las acciones es una institución de derecho sustantivo, regulada por los principios que informan el Derecho civil contemplados en los Artículos 1840-1874 del Código Civil, 31 L.P.R.A. secs. 5261-5304. *Santiago Rivera v. Ríos Alonso*, res. el 7 de febrero de 2002, 2002 T.S.P.R. 15; *Galib Frangie v. El Vocero*, 138 D.P.R. 560 (1995); *Olmo v. Young & Rubicam of P.R., Inc.*, 110 D.P.R. 740, 742-743 (1981).

El propósito de estas disposiciones es fomentar el pronto reclamo de los derechos, así como procurar la tranquilidad del obligado contra la eterna pendencia de una acción civil en su contra. *Cintrón v. E.L.A.*, 127 D.P.R. 582, 588 (1990). Para evitar esto, se castiga la inercia en el ejercicio de los derechos, evitando al mismo tiempo los litigios difíciles de adjudicar por la antigüedad de las reclamaciones, hecho que podría dejar a una de las partes en estado de indefensión. *Culebra Enterprises Corp. v. E.L.A.*, 127 D.P.R. 943 (1991); *Cintrón v. E.L.A.*, supra.

El Artículo 1861 del Código Civil, 31 L.P.R.A. sec. 5291, establece que las acciones prescriben por el mero lapso del tiempo fijado por ley. Conforme a ello, el Artículo 1864 del Código Civil, 31 L.P.R.A. sec. 5294, dispone que "[l]as acciones personales que no tengan

señalado término especial" prescribirán a los 15 años. 31 L.P.R.A. sec. 5294.

Al no estar contemplada la declaración unilateral de voluntad en el Código Civil, y por tanto, al no haberse fijado un término aplicable a dicha figura, el plazo de prescripción que le aplica es el de 15 años del Artículo 1864. Es decir, la acción en daños y perjuicios de un acreedor por incumplimiento con una obligación derivada de una declaración unilateral de voluntad prescribirá a los 15 años, contados a partir desde el momento en que la pretensión del acreedor es insatisfecha.

Al examinar la situación que se nos presenta en el caso de autos, vemos que TTS asumió válidamente una obligación mediante una declaración unilateral de voluntad. Por tanto, de probarse que las excavaciones que realizó TTS fueron las causantes de los daños al talud y a la verja, ello le hace responsable frente a la aquí recurrida, con arreglo a lo dispuesto en el Artículo 1054 de nuestro Código Civil, *supra*. De acuerdo a lo anterior, la acción para reclamar los derechos que se deriven del incumplimiento con dicha obligación prescribirá a los 15 años. Al haberse presentado la reclamación dentro de este período, actuó correctamente el Tribunal de Apelaciones al no desestimar la demanda presentada por la recurrida.

V

Por los fundamentos expuestos, resolvemos que la carta enviada por Telephone Technology Systems, Inc., a

los vecinos de la urbanización Miraflores constituyó una declaración unilateral de voluntad que tuvo el efecto de vincularla. Asimismo, resolvemos que el término aplicable para ejercitar la acción en reclamo de los derechos que se deriven del incumplimiento con dicha obligación es el de 15 años establecido en el Artículo 1864 del Código Civil de Puerto Rico, 31 L.P.R.A. §5294.

Se modifica la Sentencia del Tribunal de Apelaciones de 7 de marzo de 2003, y así modificada se confirma. Se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Bayamón, para que continúe con los procedimientos conforme a lo aquí dispuesto.

Se dictará sentencia de conformidad.


                                        BALTASAR CORRADA DEL RÍO
                                             Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Alba Nydia Ortiz Rivera

    Recurrida

      v.                          CC-2003-235    Certiorari

Puerto Rico Telephone Company
Telephone Technology System,
Inc.

    Peticionaria


SENTENCIA


San Juan, Puerto Rico, a 10 de agosto de 2004.


      Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, resolvemos que la carta enviada por Telephone Technology Systems, Inc., a los vecinos de la urbanización Miraflores constituyó una declaración unilateral de voluntad que tuvo el efecto de vincularla. Asimismo, resolvemos que el término aplicable para ejercitar la acción en reclamo de los derechos que se deriven del incumplimiento con dicha obligación es el de 15 años establecido en el Artículo 1864 del Código Civil de Puerto Rico, 31 L.P.R.A. §5294.

      Se modifica la Sentencia del Tribunal de Apelaciones de 7 de marzo de 2003, y así modificada se confirma. Se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Bayamón, para que continúe con los procedimientos conforme a lo aquí dispuesto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton no intervino.


                                    Patricia Otón Olivieri
                              Secretaria del Tribunal Supremo