CERVECERÍA CORONA, INC., peticionaria, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE CAGUAS, HON. JUAN C. SANTIAGO MATOS, JUEZ, demandado; ASOCIACIÓN PUERTORRIQUEÑA DE ARTISTAS Y TÉCNICOS DEL ESPECTÁCULO (APATE), interventor.

*Número:* O-70-133      *Resuelto:* 5 de marzo de 1971

*Beverley, Rodríguez, Estrella & Pesquera,* abogados de la peticionaria; *Jorge López Santiago* y *Ferdinand Ortega,* abogados de la interventora.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

La Asociación Puertorriqueña de Artistas y Técnicos del Espectáculo, conocida por sus siglas como APATE, instó ante el Tribunal Superior, Sala de Caguas, un recurso sobre

sentencia declaratoria contra el artista Tom Jones, y Jack Hooke, Abraham Peña y Cervecería Corona Incorporada. Suplicó se dictara una sentencia declarando (1) que la demandante es una organización sindical reconocida y con personalidad jurídica suficiente en derecho; (2) que la Federación de Músicos de Puerto Rico no tiene derecho a intervenir en la reclamación que la APATE hace sobre su derecho a una cuota por actuaciones artísticas de la parte demandada Tom Jones y su empresario Jack Hooke, y (3) que establecido ya por artistas, grupos artísticos y compañías que han actuado en Puerto Rico, el precedente de pagar a la APATE sendas cuotas por sus respectivas representaciones, es derecho de la parte demandante la cuota que le corresponde en el presente caso.

La divergencia de criterio surge en cuanto a si los demandados vienen o no obligados a pagar a la demandante, las cuotas que ésta reclama con motivo de las actuaciones artísticas de Tom Jones en Puerto Rico. Se incluye como demandada a la Cervecería Corona, Inc., porque "ha financiado la gira en Puerto Rico de la empresa Tom Jones-Jack Hooke en el Estadio Hiram Bithorn y para todos los efectos de su publicidad y organización ha colaborado como co-productora de dicho espectáculo apoyando a los codemandados en este caso a negar el reconocimiento de la Asociación Puertorriqueña de Artistas y Técnicos del Espectáculo y su derecho a reclamar las cuotas que son motivo de la controversia entre las partes."

Compareció la co-demandada Cervecería Corona, Inc., mediante escrito titulado "Moción de Desestimación y/o Sentencia Sumaria." Acompañó a dicho escrito una declaración jurada de su Vice-Presidente, Sr. Antonio Escudero, Jr., y copia del contrato celebrado entre Cervecería Corona y Jack Hooke Management Co., Inc.

Alegó dicha co-demandada que según aparece de las alegaciones de la demanda y de los documentos que acompañó

a su moción, "no existe controversia legítima en cuanto a ningún hecho material que indique posible responsabilidad legal o contractual de clase alguna por parte de Cervecería Corona, Inc., para con la parte demandante, y procede como cuestión de derecho que se dicte sentencia sumaria declarando la demanda sin lugar en cuanto a la parte aquí compareciente."

Luego de discutida la referida moción, sin otras alegaciones o documentos que la demanda y la declaración jurada y el contrato presentados por la co-demandada Cervecería Corona, Inc., el tribunal de instancia la declaró sin lugar mediante resolución emitida el 5 de junio de 1970, resolviendo que ". . . considerando los pormenores del referido contrato, la Cervecería Corona, Inc., actuó como agente de Tom Jones para sus actividades artísticas en Puerto Rico, por lo que, a la luz de la demanda, ella venía obligada a pagar las cuotas que tuviera que pagar su representado en Puerto Rico a la demandante y que no pagó."

Expedimos un auto de *certiorari* para revisar la susodicha resolución.

■ A los fines de resolver la moción de desestimación y/o la sentencia sumaria, era preciso considerar como ciertas, tal como lo hizo el tribunal de instancia, las alegaciones de la demandante. Según éstas, la APATE es una organización sindical debidamente registrada y reconocida como unión laboral por distintas agencias gubernamentales, tanto insulares como federales; que como tal organización sindical en todo tiempo ha procedido al amparo de las leyes laborales que rigen sus actividades y como tal ha recibido desde su constitución el reconocimiento y cuotas sindicales que le corresponden por actuaciones de artistas, grupos e individuos que del exterior llegan y actúan con fines lucrativos en nuestra Isla; que los demandados se han negado a reconocer la personalidad jurídica y derechos de la demandante y que como consecuencia de esa divergencia el demandado Tom

Jones se niega a pagar al tesoro de la demandante su correspondiente cuota de dos por ciento (2%) de la remuneración que reciba por su actividad artística en Puerto Rico; que el empresario Jack Hooke se niega a pagar para el Fondo de Emergencia de la sindical demandante el seis por ciento (6%) de la nómina de los artistas que participan en el espectáculo de Tom Jones.

Las únicas obligaciones contractuales que contrajo Cervecería Corona, Inc., en relación con la presentación en Puerto Rico del artista Tom Jones están consignadas en el contrato celebrado por ella con *Jack Hooke Management Co., Inc.* en 11 de febrero de 1970.

En dicho contrato, Hooke convino que en la campaña publicitaria del concierto de Tom Jones, todos los anuncios incluyendo los boletos de entrada, radio, prensa, televisión y cartelones llevarían el "logo-tipo" *Corona Presents Tom Jones in Concert*. Corona convino en pagar una suma que no excediera de $17,000.00 para satisfacer el costo de varios pasajes de avión, ida y vuelta de Nueva York a Puerto Rico, habitaciones en hoteles, 25 músicos para actuar en el concierto, traslado de un sistema de sonido desde Nueva York, dos ingenieros de sonido, impresión y venta de los boletos de entrada al concierto, alquiler de una "limousina" para uso de Tom Jones, preparación de un escenario, y proveer 4,000 sillas para espectadores alrededor del escenario. Hooke se comprometió a pagar las rentas del estadium Hiram Bithorn así como los arbitrios sobre los boletos de admisión y la contribución retenida en el origen en los pagos que se hicieran a Tom Jones o a Hooke.

Los contratantes no contrajeron obligación alguna a favor de la APATE, o de alguna otra unión local.

Es innecesario considerar la cuestión de si Cervecería Corona actuó o no como agente de Tom Jones en el concierto que éste dio en Puerto Rico a los fines de fijar responsabili-

dad, pues para llegar a ello procede determinar primero si Tom Jones y Hooke venían obligados con la APATE.

■ Las obligaciones nacen de la ley, de los contratos y cuasi contratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia. Art. 1042 del Código Civil (31 L.P.R.A. sec. 2992). La APATE no fue parte en el contrato celebrado entre Cervecería Corona y Hooke ni contiene dicho contrato estipulación alguna a su favor. No puede por tanto, reclamar bajo ese contrato, Art. 1209 del Código Civil (31 L.P.R.A. sec. 3374). Habría que determinar si la obligación de Tom Jones, Hooke y Cervecería Corona, a favor de la APATE nace de la ley, en cuyo caso sería exigible. No encontramos que la obligación cuyo cumplimiento reclama la APATE nazca del Código Civil. Tampoco se nos ha señalado ley especial alguna como fuente de dicha obligación. Art. 1043 del Código Civil (31 L.P.R.A. sec. 2993).

Según se desprende de la demanda, APATE parece fundar su derecho al pago de cuotas por Tom Jones y Hooke en (1) que es una organización sindical que en todo tiempo ha procedido al amparo de las leyes laborales que rigen sus actividades y (2) que como tal sindical ha recibido el reconocimiento y cuotas sindicales que le corresponden por actuaciones de artistas, grupos e individuos que del exterior llegan y actúan con fines lucrativos en nuestra Isla.

■ Hasta donde sabemos no conocemos ley que obligue a los artistas extranjeros a pagar cuota o contribución alguna a la APATE ([1]) y por otro lado, el precedente de que

---

([1]) La peticionaria señala acertadamente en su alegato: "No existe en Puerto Rico estatuto alguno que imponga la obligación a un promotor de jiras artísticas en Puerto Rico de artistas extranjeros, pagar cuota alguna a organización sindical o laboral por tal actuación, ni obligación de efectuar contribución alguna a fondo de bienestar de organización sindical. Sabido es que en ausencia de estatuto que tal obligación imponga, la única otra fuente u origen de responsabilidad en tal sentido sería un convenio laboral o contrato de trabajo entre la organización sindical y determinado patrono, contrato acordado y convenido en la mesa de negociación en el libre uso y

en ocasiones anteriores otros artistas extranjeros le hayan pagado cuotas, no es en derecho fuente de obligaciones. Si la obligación surge de disposiciones estatutarias o reglamentarias promulgadas por la propia APATE; entonces es de aplicación el postulado jurídico de que nuestro Código Civil no reconoce ni reglamenta la declaración unilateral de voluntad como fuente de obligaciones. *Ramírez Ortiz v. Gautier Benítez*, 87 D.P.R. 497 (1963).

■ Si Tom Jones o Hooke no vienen obligados por contrato o por ley a pagar cuotas a la APATE, tampoco viene obligada Corona aunque ésta hubiera actuado como agente de los primeros.

*Debe revocarse la resolución emitida el 5 de junio de 1970 y devolverse el caso para que el tribunal de instancia dicte sentencia desestimando la demanda contra la peticionaria Cervecería Corona, Inc., con los demás pronunciamientos procedentes en derecho.*

---

disfrute por las partes de la libertad de contratación que reconoce y protege el imperio de la ley en Puerto Rico. Así, la Ley Núm. 17 de 17 de abril de 1931, según enmendada (29 L.P.R.A. sec. 171 y siguientes) contempla y permite que se deduzca del salario de un trabajador las cuotas pagaderas a una unión 'cuando en un convenio colectivo de trabajo concertado entre un patrono y un representante de sus empleados en una unidad apropiada para la negociación colectiva, se estableciere la deducción de cuotas (check-off) para una unión que no se haya organizado ni funcione a base de prácticas ilícitas del trabajo'. Por otro lado, la ley Federal de Relaciones Obrero Patronales (Labor Management Relations Act, Sec. 302) permite la contribución por patronos del comercio interestadual a los fondos de bienestar para beneficio de los trabajadores pero sujeto, entre otros requisitos, a que medie un contrato escrito o acuerdo entre patronos y la unión representativa de sus empleados y que se provea así para la administración conjunta de dichos fondos." (Págs. 4 y 5 Alegato Corona.)