ALBA NYDIA ORTIZ RIVERA, recurrida, *v.* PUERTO RICO TELE-PHONE COMPANY y TELEPHONE TECHNOLOGY SYSTEM, INC., peticionarias.

*Número:* CC-2003-235        *Resuelto:* 10 de agosto de 2004

716

*Neddie Feliciano Jiménez*, abogado de la parte peticionaria; *Juan E. Nacer Santana*, abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR CORRADA DEL RÍO emitió la opinión del Tribunal.

> Ahora bien, el fundamento de la justicia es la buena fe, es decir, la fidelidad y la veracidad en las palabras y en los compromisos contraídos. Por eso, aunque ello pueda parecer un tanto duro a alguno, osemos no obstante imitar a los estoicos, que averiguan con cuidado de dónde proceden las palabras y creamos que la buena fe (*fides*) ha sido llamada así a causa de la frase «que se haga (*fiat*) lo que se ha dicho (*dictum*)». Cicerón, *Los Deberes: Libro Primero*. (Traducción de Francisco Samaranch.)

Nos corresponde resolver si una carta enviada por la compañía Telephone Technology Systems, Inc. constituyó una declaración unilateral de voluntad que tuviera el efecto de obligarla a actuar conforme a lo expresado en ella. En la eventualidad de que resolviéramos que la referida carta tuvo el efecto de vincular a dicha compañía, debemos resolver cuál es el término de prescripción aplicable para ejercitar la acción en reclamo del cumplimiento de dicha obligación.

## I

En 1996 la Puerto Rico Telephone Company (PRTC) contrató los servicios de la aquí peticionaria, Telephone Technology Systems, Inc. (TTS o peticionaria), para la instalación de unas nuevas líneas telefónicas en la urbanización

Miraflores (Miraflores), ubicada en el Municipio de Bayamón.

El 24 de julio de 1996 TTS envió una carta a los residentes de los bloques 4, 20, 21, 22, 23 y 24 de la referida urbanización, para anunciarles que estaría realizando las instalaciones de las nuevas líneas telefónicas. En ésta, además, TTS les indicó que repararía cualquier daño que sufrieran sus propiedades como consecuencia de las labores que realizara. El texto literal de este documento es el siguiente:

24 de julio de 1996

A:    Vecinos de los Bloques 4, 20, 21, 22, 23 y 24
       Urb. Miraflores, Bayamón

Ref:   Realización de trabajos en sus propiedades.

Sirva la presente para informarles que nuestra compañía Telephone Technology Systems, Inc., Contratista de la Telefónica está realizando trabajos de cambio de líneas telefínicas [sic] en sus propiedades según las especificaciones de la P.R.T.C.

*Cualquier daño a sus propiedades será repuesto por nosotros.*

Para cualquier información adicional pueden comunicarse al 797-4140 con este servidor.

Atentamente,

José L. Lugo<br>Coordinador

Apéndice, pág. 40.

La señora Alba Nydia Ortiz Rivera (recurrida) es residente de la propiedad número 9 del Bloque 24 de Miraflores. Según la recurrida, como resultado de las excavaciones que TTS realizó, el talud de la parte posterior de su residencia fue cediendo paulatinamente, lo que provocó que la verja construida en esa área se agrietara.

El 16 de octubre de 1997, conforme a la declaración emitida por TTS, la recurrida le envió una carta a dicha com-

pañía reclamándole una indemnización por los daños sufridos en su propiedad.

Al no obtener respuesta alguna de TTS, el 17 de mayo de 2001 la aquí recurrida presentó una demanda en contra de ésta y la PRTC ante el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). En ésta, solicitó $17,000 para la reparación del talud y de la verja, más $25,000 en concepto de angustias mentales.

El 21 de enero de 2002 y el 19 de marzo de 2002, TTS y PRTC, respectivamente, contestaron la demanda. En esencia, negaron que los daños a la propiedad de la aquí recurrida hubiesen sido causados por las excavaciones y cambios de líneas realizados. Asimismo, ambas compañías negaron que la recurrida les hubiese requerido reparación o indemnización alguna por el área afectada.

Posteriormente, mediante mociones separadas, tanto PRTC como TTS solicitaron la desestimación de la demanda interpuesta en su contra. Alegaron, en esencia, que los hechos que motivaron la demanda ocurrieron en 1996, por lo que al tratarse de una reclamación en daños y perjuicios al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, la reclamación de la peticionaria estaba prescrita toda vez que fue presentada cinco años más tarde. Señalaron, además, que aun considerando la carta enviada por la peticionaria el 16 de octubre de 1997 como una reclamación extrajudicial, el término prescriptivo ya había transcurrido en su totalidad.[1]

El 28 de mayo de 2002 la aquí recurrida se opuso a la moción de desestimación presentada por TTS y argumentó, *inter alia*, que la promesa de indemnización que dicha compañía realizara configuró la existencia de una obligación contractual a la cual le aplicaba el término prescriptivo de

---

[1] Del expediente de este Tribunal se desprende que el 19 de marzo de 2002 el TPI emitió una sentencia parcial mediante la cual tuvo por desistida con perjuicio la demanda en contra de PRTC, debido a que la peticionaria reconoció en sala abierta que su reclamación contra PRTC estaba prescrita. Apéndice, pág. 70.

quince años establecido en el Art. 1864 del Código Civil, 31 L.P.R.A. sec. 5294.

Sin embargo, dicho planteamiento no fue acogido por el TPI, el cual el 18 de octubre de 2002 emitió una sentencia mediante la cual desestimó con perjuicio la reclamación de la recurrida por entender que estaba prescrita.

En desacuerdo con el foro primario, el 5 de diciembre de 2002 la aquí recurrida presentó un recurso de apelación ante el entonces Tribunal de Circuito de Apelaciones (TA). Básicamente esbozó los mismos argumentos que había planteado en su oposición a la moción de desestimación.

Mediante Sentencia de 7 de marzo de 2003, el TA revocó el dictamen del TPI y resolvió que TTS asumió válidamente una obligación a través de una declaración unilateral de voluntad, lo que dio lugar a la creación de una relación jurídica de naturaleza contractual entre las partes y a la cual le aplicaba el plazo de 15 años establecido en el Art. 1864 del Código Civil, *supra.*

Inconforme con el curso decisorio del TA, el 1 de abril de 2003 TTS presentó ante nos una petición de *certiorari*, en la que formuló los señalamientos de error siguientes:

> 1. Erró el Honorable Tribunal [de Circuito de Apelaciones] al aceptar planteamientos que no fueron alegados en el Tribunal de Primera Instancia.
> 2. Erró el Honorable Tribunal del Circuito de Apelaciones al concluir que una manifestación unilateral de voluntad da lugar a una relación jurídica de naturaleza contractual y el término prescriptivo es de quince (15) años. Petición de *certiorari*, pág. 3.

Mediante Resolución de 6 de junio de 2003, expedimos el presente recurso. Contando con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

## II

En su primer señalamiento de error, la peticionaria alega, *inter alia*, que si bien la recurrida planteó ante el TA

que la obligación asumida por TTS constituía una declaración unilateral de voluntad, así no lo hizo ante el TPI. En la alternativa, aduce que la carta enviada a los vecinos de Miraflores no constituyó una declaración unilateral de voluntad.

Respecto al primer planteamiento, concluimos que éste carece de méritos toda vez que el TPI, en su sentencia, determinó que la reclamación de la recurrida estaba prescrita, lo que implica necesariamente que dicho foro pasó juicio sobre la naturaleza de la obligación, independientemente de que la recurrida lo hubiese alegado. Por lo tanto, al tratarse de un error en la interpretación del derecho, el TA estaba facultado para revisar la actuación del foro primario.

■    Hemos resuelto en reiteradas ocasiones que los tribunales deben conceder lo que en derecho proceda, aunque ello no haya sido perfectamente solicitado. Los foros judiciales debemos hacer lo que esté a nuestro alcance para que los casos se resuelvan en sus méritos. *Soto López v. Colón*, 143 D.P.R. 282, 291 (1997); *Morales Mejías v. Met. Pack. & Ware. Co.*, 86 D.P.R. 3 (1962); *Dávila v. Valdejully*, 84 D.P.R. 101 (1961).

Resuelto lo anterior, entramos a considerar el asunto neurálgico del caso de autos. Esto es, si bajo las circunstancias específicas de este caso la carta enviada por TTS constituyó una declaración unilateral de voluntad que tuviera el efecto de vincularla. Veamos.

■    En nuestro ordenamiento jurídico, la declaración unilateral de voluntad es reconocida como fuente de obligaciones. Mediante ésta, una persona puede obligarse, *por su sola voluntad* (sólo consultando sus intereses y deseos), *a dar, hacer o no hacer alguna cosa a favor de otra persona*, siempre y cuando su *intención de obligarse sea clara* (no sea ambigua ni dudosa), *surja de un acto jurídico idóneo* y *no sea contraria a la ley, a la moral ni al orden*

*público. Ramírez Ortiz v. Gautier Benítez*, 87 D.P.R. 497, 521 (1963).

Desde *Ramírez Ortiz v. Gautier Benítez*, supra, este Tribunal reconoció que el auge y tráfico comercial ameritaban que se reconociera la posibilidad de dar plena eficacia a una serie de situaciones en las que una sola persona pretendía obligarse, tal como es el caso de la declaración unilateral de voluntad. En esa ocasión, delineamos los elementos constitutivos de esta importante figura.

Se trataba en aquella ocasión de un accidente en una carretera, donde el hermano y empleado de un contratista atropelló al señor Ramírez Ortiz (demandante), quien pretendía cruzar una avenida mientras empujaba un carrito de mano. Como resultado del accidente, el señor Ramírez Ortiz sufrió serias lesiones, las que provocaron que se le realizaran varias transfusiones de sangre. Al no contar con suficientes medios económicos para sufragar los gastos de hospitalización, un amigo del demandante le solicitó dinero al señor Gautier Benítez (demandado). Al ser inquirido, el demandado alegadamente manifestó, luego de donarle veinte dólares y llamar a su aseguradora para que atendiera el asunto, que se hacía responsable por todos los daños y perjuicios que sufriera Ramírez Ortiz.

Posteriormente, el señor Ramírez Ortiz presentó una demanda, por daños y perjuicios, ante el TPI. Luego de evaluar las posiciones de ambas partes, el TPI concluyó que la declaración unilateral realizada por el señor Gautier Benítez lo obligaba a compensar todos los daños que el demandante sufrió como consecuencia del accidente. Inconforme, el señor Gautier Benítez acudió ante nos. Este Tribunal revocó la sentencia emitida por el foro primario y *concluyó que la declaración del señor Gautier Benítez era insuficiente para dejar establecida una obligación unilateral vinculante, toda vez que de ésta no surgió su clara intención de obligarse.*

■    Al así resolver, recalcamos que la declaración uni-
lateral de voluntad que se estima vinculante es

> *... la promesa o expresión de voluntad unilateral ... por la*
> *que, con certeza, nos imponemos la firme obligación de dar,*
> *hacer o no hacer alguna cosa en provecho de otro, capaz de*
> *conferir a éste el derecho a exigir su cumplimiento o el de re-*
> *sarcirse de los consecuentes daños y perjuicios que hubiere*
> *realmente sufrido por lo que hiciera con vistas a dicha promesa*
> *y realmente inducido por ella.* (Énfasis suplido.) *Ramírez Ortiz*
> *v. Gautier Benítez,* supra, pág. 508.

■    A esos fines, expresamos que

> [n]ada impide en nuestro ordenamiento jurídico, siempre
> que no sea contrario a la ley, a la moral ni al orden público, *que*
> *una persona, con capacidad plena para obrar y en ánimo de*
> *obligarse por su propio convencimiento y resolución firme,*
> *pueda quedar en derecho vinculada, sólo mediante su indubi-*
> *tada declaración de voluntad unilateral, a dar, hacer o no ha-*
> *cer alguna cosa posible a favor de otra persona.*
> Desde luego, tratándose de una obligación simple, sin causa
> típica, sin condición, contrapartida o contraprestación que la
> compense, a veces de pura beneficencia, puede resultar exce-
> sivamente oneroso para el promitente su cumplimiento. *La*
> *obligación debe derivarse de un acto jurídico idóneo para*
> *producirla. No debe existir incertidumbre ni en la forma en que*
> *se expresa la declaración ni en su sustancia o contenido.*
>
> .    .    .    .    .    .    .    .
>
> *Una vez ligado firmemente el promitente a hacer buena su*
> *promesa, debe cumplirla al tenor de la misma, quedando su-*
> *jeto,* desde luego, en caso de proceder a su cumplimiento con
> dolo, negligencia o morosidad, o de contravenirla de cualquier
> modo, *a la indemnización de los daños y perjuicios causados,*
> *con arreglo a lo dispuesto en el Art. 1054 de nuestro Código*
> *Civil,* que se refiere a toda clase de obligaciones cualquiera
> que sea su origen. (Escolios omitidos y énfasis suplido.) Íd.,
> págs. 521–522.

■    De las anteriores expresiones, podemos colegir
que para que una declaración unilateral sea vinculante de-
ben concurrir los elementos siguientes: (1) la sola voluntad
de la persona que pretende obligarse; (2) que dicha persona
goce de capacidad legal suficiente; (3) que su intención de

obligarse sea clara; (4) que la obligación tenga objeto; (5) que exista certeza sobre la forma y el contenido de la declaración; (6) que surja de un acto jurídico idóneo, y (7) que el contenido de la obligación no sea contrario a la ley, a la moral ni al orden público.

Si concurren estos requisitos, la declaración unilateral de voluntad vinculará al promitente desde el momento en que la efectúa. Si bien la aceptación del acreedor será indispensable para el nacimiento del derecho de crédito, no lo será para la formación de la obligación. Véanse: A. Hernández Gil, *Derecho de Obligaciones*, Madrid, [s. Ed.], 1960, págs. 246–255; L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 3ra ed., Madrid, Ed. Tecnos, 1982, Vol. II, págs. 144–147; R. Rojina Villegas, *Derecho Civil Mexicano*, 4ta ed., México, Ed. Porrúa, T. 1, Vol. 1, págs. 421 y ss.; R. Worms, *De la volonté unilatérale considérée comme source d'obligations*, Paris, 1891, págs. 5 y 198.

Asimismo, conforme a lo establecido en el Art. 1054 del Código Civil, 31 L.P.R.A. sec. 3018, el declarante quedará sujeto a indemnizar los daños y perjuicios que provoque a raíz de su incumplimiento.

En el caso de marras, la peticionaria argumenta que, a pesar de que en *Ramírez Ortiz v. Gautier Benítez*, supra, este Tribunal reconoció la declaración unilateral de voluntad como fuente de obligaciones, nuestros pronunciamientos en *Cervecería Corona, Inc. v. Tribunal Superior*, 99 D.P.R. 698 (1971), revocaron lo allí expresado. No tiene razón. Veamos.

En *Cervecería Corona, Inc. v. Tribunal Superior*, supra, una unión de músicos, conocida como la APATE, pretendía cobrar ciertas cuotas dinerarias con motivo de la presentación de un cantante no residente en nuestra isla. La unión fundamentó su pretensión en el reglamento del gremio. Para reclamar su alegada acreencia, la APATE presentó una demanda sobre sentencia declaratoria ante el Tribunal Superior contra el artista Tom Jones, Abraham Peña, el

empresario Jack Hooke y la Cervecería Corona Incorporada, quien era agente del cantante en Puerto Rico. Alegó, en esencia, que todo artista no residente en Puerto Rico que celebrara un concierto en la isla venía obligado a pagar unas cuotas a la referida unión.

El Tribunal Superior, luego de analizar un contrato suscrito entre Cervecería Corona y la empresa del señor Jack Hooke, el cual no contenía estipulación alguna a favor de la APATE, acogió el argumento de los demandantes y resolvió que la Cervecería Corona estaba obligada a pagar a la APATE las cuotas de su representado en Puerto Rico. Inconforme, Cervecería Corona acudió ante este Tribunal mediante un recurso de *certiorari.*

Luego de evaluar la comparecencia de ambas partes, este Tribunal revocó el dictamen revisado y concluyó que la obligación cuyo cumplimiento reclamaba la APATE no nacía de disposición legal alguna ni del contrato suscrito entre Cervecería Corona y el señor Jack Hooke. Al disponer del asunto expresamos que:

> Hasta donde sabemos no conocemos ley que obligue a los artistas extranjeros a pagar cuota o contribución alguna a la APATE y por otro lado, el precedente de que en ocasiones anteriores otros artistas extranjeros le hayan pagado cuotas, no es en derecho fuente de obligaciones. *Si la obligación surge de disposiciones estatutarias o reglamentarias promulgadas por la propia APATE; entonces es de aplicación el postulado jurídico de que nuestro Código Civil no reconoce ni reglamenta la declaración unilateral de voluntad como fuente de obligaciones.* (Énfasis suplido.) *Cervecería Corona, Inc. v. Tribunal Superior,* supra, pág. 704.

Sobre este pronunciamiento, el cual ha causado confusión en la doctrina puertorriqueña, debemos aclarar que éste no tuvo como propósito negar la existencia de la declaración unilateral de voluntad como fuente generadora de obligaciones en nuestro ordenamiento. Si se analizan dichas expresiones, en el contexto de los hechos del referido caso, vemos que lo que este Tribunal concluyó fue que la

declaración que hiciera la APATE no constituía el tipo de declaración unilateral al que se le reconoce fuerza vinculante en nuestro ordenamiento. Nótese que en *Cervecería Corona, Inc. v. Tribunal Superior*, supra, quien hizo la declaración fue el supuesto acreedor (la APATE), quien pretendía que el imputado deudor (Cervecería Corona) se obligara al pago de una obligación que no había asumido. Como bien señala el profesor Vélez Torres,

> [é]sta no es la declaración de voluntad a la que se refiere la doctrina como fuente de obligación …. En este caso el declarante quiso imponer unilateralmente una obligación a un sujeto que no la aceptó ni reconoció como tal. *Un propósito totalmente opuesto y ajeno a la figura de la declaración unilateral como fuente de obligación del declarante frente a otro, que por su sola emisión, lo convierte en su deudor.* (Énfasis en el original suprimido y énfasis suplido.) J.R. Vélez Torres, *Derecho de Obligaciones*, 2da ed. (revisada por Migdalia Fraticelli Torres), San Juan, Ed. Universidad Interamericana de Puerto Rico, Facultad de Derecho, 1997, págs. 43–44.

De esta forma, concluimos que lo resuelto por este Tribunal en el referido caso no tuvo el alcance de negar la existencia de la declaración unilateral de voluntad como fuente de obligaciones.

Lo anterior quedó confirmado en *Int. General Electric v. Concrete Builders*, 104 D.P.R. 871 (1976), oportunidad en la que este Tribunal se reafirmó en la fuerza vinculante de la declaración unilateral de voluntad. Citando con aprobación al tratadista español Puig Brutau, el Tribunal *expresó que lo declarado unilateralmente pudo haber incidido en la conducta ajena y en la medida en que haya sucedido así puede ser necesario proteger la confianza depositada en la apariencia.* Íd., pág. 877. En esa ocasión, este Tribunal expresó que *no reconocer la obligación que genera la manifestación unilateral de voluntad también se puede interpretar como una conducta de proceder en contra de los actos propios.* A esos fines, este Tribunal expresó que

> [e]n la construcción jurídica autónoma que da contorno a la

norma de no ir contra los propios actos el efecto se produce de un modo objetivo, en el cual para nada cuenta la verdadera voluntad del autor de los actos. Se protege la confianza que estos actos suscitan en los terceros, *porque venir contra ellos constituiría obviamente un ataque a la buena fe. Cuando se impide que una persona vaya contra sus propios actos, se deja por completo de lado toda la doctrina de declaración de voluntad para imponer directamente un efecto jurídico.* (Énfasis suplido.) Íd., págs. 876–877.

En esta ocasión, *para reafirmar la obligación que genera una declaración unilateral de voluntad,* este Tribunal adujo como fundamento que la confianza depositada por la persona que creyó en la declaración era una razón más para sostener su validez.[2] De esta manera, este Tribunal concluyó que cuando una persona emite una declaración unilateral de voluntad, ello genera un estado de derecho sobre el cual descansan terceras personas. Cuando ello sucede, es necesario proteger la confianza generada, ya que a nadie le es lícito ir ni obrar contra sus propios actos.

Para finalizar, debemos advertir que el que declara unilateralmente su voluntad en ánimo de quedar obligado, puede retirar la manifestación efectuada de la misma forma en que la emitió. Dicho en otras palabras, si la declaración unilateral de voluntad se hizo mediante una carta escrita, el manifestante deberá retirar la promesa mediante carta escrita también. Nos dice Vázquez Bote que para que una declaración unilateral no se estime vinculante tiene que haber una "comunicación del voluntariamente obligado cancelando o alterando su oferta inicial". E. Vázquez Bote, *Tratado teórico, práctico y crítico de derecho privado puertorriqueño: derecho de obligaciones,* Orford, Ed. Equity, 1991, pág. 102. Por igual criterio se decanta Puig Brutau, quien postula que la

---

[2] En dicho caso, este Tribunal determinó que lo expresado en una carta de crédito constituyó una declaración unilateral de voluntad, cuyos términos "eran dignos de la confianza del suplidor que ninguna razón tenía para dudar de la buena fe de la representación que se le hacía". (Escolios omitidos.) *Int. General Electric v. Concrete Builders,* 104 D.P.R. 871, 876 (1976).

... promesa unilateral es revocable, si se puede dar a la revocación la debida publicidad, antes de que cuantos pudieron confiar en ella hayan realizado, en todo o en parte sustancial, los actos exigidos por el promitente. J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed., Barcelona, Ed. Bosch, 1985, T. 1, Vol. II, pág. 65.

Conforme a este marco jurídico, procede que resolvamos la primera controversia ante nuestra consideración.

## III

Al examinar los hechos del caso de autos, vemos que TTS le envió una carta a los residentes de Miraflores, mediante la cual clara e indubitadamente se obligó a responder por cualquier daño que le causara a las residencias de éstos durante el proceso de instalación de las nuevas líneas telefónicas. De dicha misiva surge, sin reservas mentales de ningún tipo, su intención de obligarse al expresar que "[c]ualquier daño a sus propiedades será repuesto por nosotros". Esa declaración no adolece de ambigüedad ni incertidumbre alguna.

De igual forma, la obligación surge de un acto jurídico idóneo y no es contraria a la ley, a la moral ni al orden público. Asimismo, TTS no revocó la declaración realizada, pues no envió posteriormente una misiva en la cual se retractara de la obligación originalmente contraída ni le brindó a la retractación la debida publicidad. Por lo tanto, al concurrir todos estos elementos, resulta forzoso concluir que TTS quedó obligada por su sola declaración.

Por otro lado, dicha declaración generó confianza en los residentes afectados, quienes aceptaron que se realizaran las referidas obras. En específico, la recurrida estuvo conforme en que se realizara la construcción, a pesar de los daños a que estaba expuesta a sufrir su propiedad. La buena fe y la seguridad que deben permear en el tráfico jurídico nos obligan a reconocer el carácter obligatorio de este tipo de promesa.

Como adelantáramos previamente, en el caso de marras, la obligación surgió del contenido de la carta suscrita por TTS. No es relevante a la controversia de autos si ocurrió un acto ilícito (el cual fue posterior a la declaración) o si se concretó una obligación contractual entre el causante del daño y el perjudicado tal como concluye el TA.

■ Distinto a *Ramírez Ortiz v. Gautier Benítez*, supra, donde la intención de obligarse del señor Gautier Benítez no quedó claramente reflejada, en el presente caso no albergamos dudas de que TTS, por su sola voluntad, se comprometió válida y legalmente a reparar todos los daños que causara mientras instalaba las nuevas líneas telefónicas. El medio utilizado (la carta) fue adecuado, y su omisión de no satisfacer la alegada pretensión (derecho de crédito) de la recurrida, le expuso a que se incoara en su contra la acción contemplada en el Art. 1054 del Código Civil, *supra*, que se refiere a toda clase de obligaciones cualquiera que sea su origen.[3]

Habiendo resuelto este asunto, pasemos a la consideración del segundo señalamiento de error.

## IV

Nos corresponde ahora determinar cuál es el término prescriptivo aplicable a la acción en reclamo de obligaciones cuya fuente es la declaración unilateral de voluntad.

En el caso de autos, el TA concluyó correctamente que a la obligación contraída, mediante una declaración unilateral de voluntad, le aplicaba el término prescriptivo de quince años dispuesto en el Art. 1864 del Código Civil, *supra*. Sin embargo, su raciocinio erróneamente descansó

---

[3] El texto literal del referido artículo lee de la manera siguiente:

"Quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas." 31 L.P.R.A. sec. 3018.

en que la declaración unilateral de voluntad dejaba establecida una obligación contractual exigible. Veamos.

A diferencia del contrato, el cual requiere bilateralidad en cuanto a las partes y un concurso de voluntades entre éstas, la declaración unilateral de voluntad no exige ningún acuerdo; es producto de una voluntad aislada, y es unilateral en su formación y en sus efectos. *Por lo tanto, no podemos equipararla a una obligación de naturaleza contractual.* Tampoco constituye una oferta de contrato, toda vez que la declaración unilateral no requiere de aceptación para que se perfeccione la obligación. Nos dice Hernández Gil, *op. cit.*, pág. 254, que

> [l]a ejecución por una persona del acto delineado en la promesa *no actúa como perfección de un contrato* —sólo posible si aquélla se mantuviera—, sino como realización del supuesto de hecho que dota de efectividad a la promesa, *vinculante desde el principio*, y determina quién es, en concreto, el acreedor. (Énfasis suplido.)

A raíz de lo anterior, resulta forzoso concluir que desde *Ramírez Ortiz v. Gautier Benítez*, supra, nuestro ordenamiento ha reconocido a la declaración unilateral de voluntad como una fuente autónoma de obligaciones, la cual se suma a las otras fuentes enumeradas en el Art. 1042 del Código Civil, 31 L.P.R.A. sec. 2992.[4]

Aclarada ya la naturaleza independiente y autónoma de la declaración unilateral de voluntad como fuente de las obligaciones, pasemos a analizar el período de prescripción aplicable a las acciones que emanan de estas situaciones.

Para determinar cuándo prescribe la obligación que surge de una declaración unilateral de voluntad debemos acudir a nuestro Código Civil. Como se sabe, la pres-

---

[4] El texto del citado artículo dispone que:

"Las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia." 31 L.P.R.A. sec. 2992.

cripción de las acciones es una institución de derecho sustantivo, regulada por los principios que informan el derecho civil establecidos en los Arts. 1840–1874 del Código Civil, 31 L.P.R.A. secs. 5261–5304. *Santiago v. Ríos Alonso*, 156 D.P.R. 181 (2002); *Galib Frangie v. El Vocero de P.R.*, 138 D.P.R. 560 (1995); *Olmo v. Young & Rubicam of P.R., Inc.*, 110 D.P.R. 740, 742–743 (1981).

El propósito de estas disposiciones es fomentar el pronto reclamo de los derechos, así como procurar la tranquilidad del obligado contra la eterna pendencia de una acción civil en su contra. *Cintrón v. E.L.A.*, 127 D.P.R. 582, 588 (1990). Para evitar esto, se castiga la inercia en el ejercicio de los derechos, al mismo tiempo que se evitan los litigios difíciles de adjudicar por la antigüedad de las reclamaciones, hecho que podría dejar a una de las partes en estado de indefensión. *Culebra Enterprises Corp. v. E.L.A.*, 127 D.P.R. 943 (1991); *Cintrón v. E.L.A.*, supra.

El Art. 1861 del Código Civil, 31 L.P.R.A. sec. 5291, establece que las acciones prescriben por el mero lapso del tiempo fijado por ley. Conforme a ello, el Art. 1864 del Código Civil, 31 L.P.R.A. sec. 5294, dispone que "las [acciones] personales que no tengan señalado término especial" prescribirán a los 15 años.

Al no estar establecida la declaración unilateral de voluntad en el Código Civil y, por lo tanto, no habérsele fijado un término aplicable, el plazo de prescripción que le aplica es el de 15 años del citado Art. 1864. Es decir, la acción en daños y perjuicios de un acreedor por incumplimiento con una obligación derivada de una declaración unilateral de voluntad prescribirá a los 15 años, contados a partir del momento en que la pretensión del acreedor es insatisfecha.

Al examinar la situación que se nos presenta en el caso de autos, vemos que TTS asumió válidamente una obligación mediante una declaración unilateral de voluntad. Por lo tanto, de probarse que las excavaciones que realizó TTS

fueron las causantes de los daños al talud y a la verja, ello le haría responsable frente a la aquí recurrida, con arreglo a lo dispuesto en el Art. 1054 de nuestro Código Civil, *supra*. De acuerdo con lo anterior, la acción para reclamar los derechos que se deriven del incumplimiento con dicha obligación prescribirá a los 15 años. Al haberse presentado la reclamación dentro de este período, actuó correctamente el Tribunal de Apelaciones al no desestimar la demanda presentada por la recurrida.

## V

Por los fundamentos expuestos, *resolvemos que la carta enviada por Telephone Technology Systems, Inc. a los vecinos de la urbanización Miraflores constituyó una declaración unilateral de voluntad que tuvo el efecto de vincularla. Asimismo, resolvemos que el término aplicable para ejercitar la acción en reclamo de los derechos que se deriven del incumplimiento con dicha obligación es el de 15 años establecido en el Art. 1864 del Código Civil de Puerto Rico,* supra. *Se modifica la sentencia del Tribunal de Apelaciones de 7 de marzo de 2003 y, así modificada, se confirma. Se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Bayamón, para que continúe con los procedimientos conforme a lo aquí dispuesto.*

*Se dictará sentencia de conformidad.*

El Juez Presidente Señor Hernández Denton no intervino.