# 2009 DTA 124

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL IV**

JAIME F. MARRERO BASSO
Apelante

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO, RAMÓN CANTERO FRAU, POR SÍ Y
COMO PRINCIPAL OFICIAL DE C.V. ENTERTAIMENT GROUP D.B.A.
GALAXY LANE; EQUIS DE TAL, ZETA DE CUAL
Apelados

Núm. KLAN-2009-00585

San Juan, Puerto Rico, a 4 de septiembre de 2009

Panel integrado por su Presidente, el Juez Arbona Lago,
el Juez Salas Soler y la Juez Colom García

Arbona Lago, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### Antecedentes

El 15 de octubre de 2001, el Sr. Jaime Marrero Basso (Sr. Marrero) solicitó y obtuvo de la Policía de Puerto Rico un certificado de antecedentes penales, del cual surgía una acusación en su contra por infracción al Art. 171 del Código Penal de 1974 (escalamiento agravado), causa criminal K PD2001G1430. Ese mismo día, el Sr. Marrero presentó la querella núm. 2001126609955 ante la Uniformada, aduciendo que dicha información era falsa y errónea. (Ap., pág. 24.)

El 27 de febrero de 2002, el Sr. Marrero compareció ante la Policía como parte de la investigación de la referida querella y expuso que "[l]a persona que verdaderamente cometió tal delito fue un impostor que encontró la Licencia de Conducir que se le había extraviado". (Ap., pág. 18.)

Conforme encontró probado el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI) y respecto a lo cual el apelante no alega en contrario en su escrito de apelación, el 22 de abril de 2002, el Sr. Marrero notificó al Estado Libre Asociado de Puerto Rico (ELA), mediante carta cursada a la entonces Secretaria de Justicia, Hon. Anabelle Rodríguez Rodríguez, de su intención de demandar al Estado y a la Uniformada, a los fines de cumplir con el requisito de notificación previa establecido en el Art. 2A de la Ley de Reclamaciones y Demandas contra el Estado, Ley Núm. 104 de 29 de junio de 1965, según enmendada, 32 LPRA sec. 3077 *et seq.*

Así las cosas, el 10 de junio de 2008, el Sr. Marrero solicitó otro certificado de antecedentes penales el cual reflejó que el 20 de febrero de 2002 había sido sentenciado en la causa criminal K PD2001G1430 a cumplir 4 años de reclusión por el delito de tentativa de escalamiento (Art. 170 del Código Penal de 1974). (Ap., pág. 24.)

Ante ello, el 29 de julio de 2008, el Sr. Marrero requirió del Estado que se realizara un análisis de huellas

dactilares, el cual se practicó ese mismo día. El 30 de julio de 2008, el Sr. Luis J. Mercado Rivera, Técnico de Huellas Dactilares I adscrito a la División de Identificación Criminal de la Uniformada, expuso por escrito que:

*"La tarjeta decadactilar como tomadas a John Gómez Del Cerro, el 11 de mayo de 2004, por el delito de escalamiento, en el Cuerpo de Investigación Criminal de San Juan, **se identifica** con las huellas dactilares como tomadas a Jaime Marrero Basso, en la PPR-3.1 el 15 de octubre de 2001, por el delito del Art. 171 C.P. en el C.I.C. de San Juan; en adición, debo señalar que las huellas dactilares de la tarjeta Applicant como tomadas a Jaime Marrero Basso, el 29 de julio de 2008, en el C.I.C. de San Juan, **no se identifican** con las huellas dactilares tomadas en la PPR-3.1, como tomadas a Jaime Marrero Basso."* (Énfasis en el original.) (Ap., pág. 23.)

El 29 de agosto de 2008, el Sr. Marrero accionó judicialmente ante el TPI en reclamo de *quántum* reparador por daños y perjuicios (K DP2008-1133) contra el ELA, entre otros demandados del epígrafe. **[1]**

Como primera causa de acción y en lo aquí pertinente, el Sr. Marrero alegó que la Policía fue negligente al mantener en su expediente de antecedentes penales una convicción por un delito que no cometió. De tal forma, el Sr. Marrero adujo que desde el 27 de febrero de 2002 acudió a la Policía para aclarar que quién cometió el delito que aparecía en su certificado de antecedentes penales fue el Sr. John Gómez del Cerro, quién al momento de ser arrestado poseía ilegalmente la licencia de conducir que a él se le había extraviado. Arguyó que compareció varias veces a la Policía, "en por lo menos cinco (5) ocasiones", pero sin detallar las fechas específicas, a solicitar el referido certificado y seguía apareciendo la convicción, afectando su récord de antecedentes penales. (Ap., pág. 19.)

Luego de trámite, no necesario aquí detallar, el 1 de diciembre de 2008, el ELA intentó derrotar la demanda mediante moción de desestimación predicada en la prescripción de la causa. Mediante Orden notificada el 27 de enero de 2009, el TPI dispuso "No Ha Lugar" dicha solicitud de desestimación. (Ap., pág. 17.) De tal determinación, el Estado solicitó reconsideración el 10 de febrero de 2009. (Ap., págs. 10-16.)

El 25 de marzo de 2009, archivada en autos copia de su notificación el 31 de igual mes y año, Instancia acogió la solicitud en reconsideración y dictó Sentencia Parcial en la que procedió a desestimar con perjuicio la demanda contra el ELA, por prescripción de la causa de acción. El foro apelado concluyó como sigue:

*"Aplicado el derecho a los hechos del presente caso y a la luz de la doctrina de daños continuados, entendemos que a pesar de que el demandante alega haber sufrido daños por un largo período de tiempo, podemos determinar que el conocimiento del daño nació en el momento en que el demandante conoció su causa de acción, siendo esto último el momento en que advino en conocimiento del alegado error en su certificado de antecedentes penales el **27 de febrero de 2002**. Al conocer este hecho era razonable que a su vez pudiera constatar todos los efectos previsibles del mencionado error.*

*Esta conclusión se reafirma aún más cuando obra en autos que el **22 de abril de 2002**, la parte demandante envió una carta que fue recibida en el Departamento de Justicia el 26 de abril de ese mismo año. En la referida notificación, indica su intención de demandar al E.L.A. y a la Policía de Puerto Rico por su alegada negligencia al identificarle erróneamente como imputado de delito y menciona además los daños producto de dichas actuaciones."* (Énfasis en el original.) (Ap., págs. 6-7.)

Habida cuenta de lo anterior, el 28 de abril de 2009, el Sr. Marrero presentó la causa de marras, con el siguiente señalamiento:

*"El Honorable Tribunal de Primera Instancia (TPI de aquí en adelante) Sala de San Juan, cometió error al dictar su "Sentencia Parcial" del 25 de marzo de 2009; todo ello aplicando equivocadamente la doctrina de daños continuados."*

El 28 de mayo de 2009, la Honorable Procuradora General presentó su alegato. La causa está sometida y procede resolver.

**Exposición y Análisis**

## I

Como se sabe, la prescripción extintiva es materia de derecho sustantivo y no procesal, y se rige por los principios que informan al Derecho civil. *Ortiz v. P.R. Telephone*, 162 DPR 715, 733 (2004); *Olmo v. Young & Rubicam of P.R., Inc.*, 110 DPR 740, 742-743 (1981). Dicha figura jurídica acarrea la desestimación de cualquier demanda presentada fuera del plazo dispuesto por ley. *Rimco, Inc. v. Pérez y Cía. de P.R., Inc.*, 148 DPR 60, 65 (1999). Ello ocurre con el objetivo de castigar la inercia en el ejercicio de los derechos y evitar litigios difíciles de adjudicar debido a la antigüedad de las reclamaciones. *García Pérez v. Corp. Serv. Mujer*, 174 DPR ___ (2008), **2008 JTS 134**; *Ortiz v. P.R. Telephone, supra*.

La causa de acción que nos ocupa está gobernada por el Artículo 1802 del Código Civil, que establece que aquél que por acción u omisión, culposa o negligente, cause daño a otro, tiene el deber jurídico de repararlo. 31 LPRA sec. 5141. *Cf., García Pérez v. Corp. Serv. Mujer, supra*; *Colón Santos v. Coop. Seg. Múlt. P.R.*, 173 DPR ___ (2008), **2008 JTS 53**.

Conforme pauta el Artículo 1868 del Código Civil, dicha causa de acción dirigida a reclamar responsabilidad civil extracontractual prescribe al término de un año. 31 LPRA sec. 5298. Así, según la teoría cognoscitiva del daño que rige en nuestro ordenamiento jurídico, el plazo prescriptivo para vindicar su derecho al palio del Art. 1802, *supra*, comienza a transcurrir a partir del instante en que el agraviado tuvo conocimiento del daño y de quién lo causó, para poder dirigir la demanda contra él. Es en ese momento que el daño puede ser alegado y reclamado. *García Pérez v. Corp. Serv. Mujer, supra*; *Vera v. Dr. Bravo*, 161 DPR 308, 322 (2004); *Santiago v. Ríos Alonso*, 156 DPR 181, 189 (2002).

Ahora bien, para determinar el *punctus temporis* del término prescriptivo extintivo de un año, resulta medular considerar el tipo de daño del que se ha sido víctima. Dependiendo de su naturaleza, se han reconocido diversas categorías de daños, entre los que se encuentran los "daños sucesivos" y los "daños continuados". *Santiago v. Ríos Alonso, supra*, pág. 190; *Rivera Encarnación v. E.L.A.*, 113 DPR 383, 386 (1982). Los primeros han sido definidos por nuestro más alto foro como "una secuencia de reconocimientos de consecuencias lesivas por parte del perjudicado, las que se producen y manifiestan periódicamente, pero que **se van conociendo en momentos distintos** entre los que media un lapso de tiempo finito, **sin que en momento alguno sean previsibles los daños subsiguientes**, ni sea posible descubrirlos empleando diligencia razonable." (Énfasis suplido.) *Santiago v. Ríos Alonso, supra*, pág. 191, citando a H. Brau del Toro, *Los Daños y Perjuicios Extracontractuales en Puerto Rico*, 2da ed., San Juan, **Publicaciones J.T.S.**, 1986, Vol. II, Cap. X, pág. 643.

Por su parte, los **daños continuados** son "aquellos producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en **consecuencias lesivas ininterrumpidas, sostenidas, duraderas sin interrupción**, unidas entre sí, las cuales al ser conocidas hacen que también se conozca --**por ser previsible**--, el carácter continuado e ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de daño actual (aquel que ya ha acaecido), y de daño futuro previsible y por tanto cierto." (Énfasis nuestro.) *Santiago v. Ríos Alonso, supra*, pág. 190.

El término prescriptivo en casos de daños continuados comienza a decursar, conforme a la teoría cognoscitiva, desde que el daño inicial es conocido. En vista de que lo característico del daño continuado es su previsibilidad, "se entiende que el término prescriptivo comienza a transcurrir cuando el perjudicado conoce, **por primera vez**, el daño y el responsable de éste y que dicho daño 'comprende todas sus consecuencias como posibles sean de prever." (Énfasis suplido.) *Nazario v. E.L.A.*, 159 DPR 799, 806 (2003) (Sent.). "En la demanda

interpuesta oportunamente, el perjudicado deberá incluir, además de los daños actuales ya acaecidos, todos los futuros que sean previsibles prescribiendo al cabo de dicho término aquéllos que no fueren incluidos". Brau del Toro, *op. cit.*, pág. 650.

## II

La cuestión aquí a dirimir se circunscribe a determinar si la acción en daños instada contra el ELA está prescrita.

El Sr. Marrero niega que la reclamación esté prescrita, no porque se reclamen daños sucesivos. Al contrario, aquí no está en tela de juicio que lo que se reclama son daños continuados. No obstante, plantea el apelante que Instancia incidió al aplicar la doctrina de daños continuados y consecuentemente concluir que la causa de acción contra el Estado había prescrito. Sostiene que dicha reclamación no prescribió, puesto que los daños continuados "se reabrieron al surgir los hechos que envuelven el 'Exh. 7'". (Escrito de Apelación, pág. 4.) En tal Exh. 7 surge que el 21 de octubre de 2007 un particular **[2]** advirtió en la sección "Búsqueda y Consulta de Casos" del portal cibernético de la Rama Judicial que el Sr. Marrero alegadamente había sido convicto y sentenciado a 4 años de reclusión. No le asiste la razón.

El Sr. Marrero apoya su razón de pedir en una premisa equivocada, puesto que por definición, los daños continuados no son susceptibles de ser "reabiertos" o "revividos" según argumenta en la discusión del error. Conforme ya apuntamos, los daños continuados a diferencia de los sucesivos, se producen ininterrumpidamente. Es decir, a partir del momento en que se verifica el daño original resultante de la actuación culposa o negligente del demandado, "se pueden **prever** consecuencias lesivas que continuarán ocurriendo en el **futuro** de forma **incesante y sostenida**". (Énfasis nuestro.) *Nazario v. E.L.A.*, *supra*, pág. 807. Se trata de daños derivados de un acto ilícito como unidad y no como una pluralidad de daños particulares como lo son los sucesivos.

Tratándose aquí de daños continuados, tenemos que atender al momento en que se verificó la producción del daño original del que emanan los daños futuros así como al momento en el que el perjudicado "se enter[ó] del daño y de quién se lo causó." *Colón Pérez v. Televicentro de P.R.*, 175 DPR ___ (2009), **2009 JTS 46**, pág. 655.

De los autos surge que el Sr. Marrero advino en conocimiento de la actuación negligente por parte del Estado, al erróneamente identificarlo como acusado del delito de escalamiento, e incluir dicha información en sus expedientes de antecedentes penales, el **15 de octubre de 2001,** cuando acudió a la Policía y solicitó copia de su certificado de antecedentes penales. Entendemos que es a partir de tal fecha (15 de octubre de 2001) que el Sr. Marrero reconoció que había sufrido un daño cierto y quién se lo ocasionó. Tan es así que ese mismo día el Sr. Marrero presentó la querella núm. 2001126609955 ante la Uniformada, solicitando rectificación del alegado error. (Ap., pág. 24.) Por tanto, el Sr. Marrero tenía el plazo de un año, esto es, hasta el **15 de octubre de 2002**, para presentar o interrumpir la acción en daños y perjuicios dentro del término prescriptivo.

El **22 de abril de 2002,** el Sr. Marrero remitió una carta al Departamento de Justicia notificando de su intención de accionar judicialmente contra el Estado, cuyo contenido aludía al derecho afectado por la prescripción, entiéndase, el daño acaecido por la actuación negligente del ELA. No albergamos duda de que dicha comunicación constituyó una primera, válida y suficiente reclamación extrajudicial que interrumpió oportunamente el plazo prescriptivo hasta el **22 de abril de 2003**. *Díaz de Diana v. A.J.A.S. Ins. Co.*, 110 DPR 471, 474 (1980). *Cf.* Art. 1873 del Código Civil, 31 LPRA sec. 5303. Siendo así, la reclamación había prescrito cuando el **29 de agosto de 2008** se presentó la demanda de epígrafe, habiendo transcurrido un lapso de inactividad de más de 5 años, desde la interrupción.

De hecho, aún partiendo de las alegaciones del Sr. Marrero en su demanda y de las conclusiones del TPI respecto a que el conocimiento del daño nació el 27 de febrero de 2002, cuando el Sr. Marrero acudió a la Policía como parte de la investigación de la querella que él mismo presentó el 15 de octubre de 2001, la demanda K

DP2008-1133 (804) de todos modos estaría prescrita porque el plazo prescriptivo fue única y eficazmente interrumpido el 22 de abril de 2002 y la demanda se instó el 29 de agosto de 2008.

De igual modo, precisa señalar que los eventos verificados el 21 de octubre de 2007, cuando apareció la información de la convicción en el portal cibernético de la Rama Judicial; y el 10 de junio de 2008, cuando surgió la convicción en el certificado de antecedentes penales que el Sr. Marrero nuevamente solicitó, son consecuencias o daños subsiguientes cuya ocurrencia el Sr. Marrero podía **prever** desde el 15 de octubre de 2001, cuando conoció de la actuación negligente del Estado y del daño cierto resultante de la misma.

Conforme a los hechos que informa esta causa y a la luz de la teoría cognoscitiva del daño, forzoso es concluir que la causa de acción contra el Estado está prescrita. Por tanto, no se cometió el error señalado y debemos confirmar.

**Dictamen**

Conforme lo expuesto, confirmamos la Sentencia aquí apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones

**ESCOLIOS 2009 DTA 124**

**1.** La demanda incluye una segunda causa de acción por despido injustificado contra el Sr. Ramón Cantero Frau, por sí y como principal oficial de C. V. Entertainment Group D/B/A Galaxy Lane. (Ap., págs. 19-20.)

**2.** En el Escrito de Apelación el Sr. Marrero identifica al particular que hizo la búsqueda en el portal de la Rama Judicial como "un compañero abogado" de su representante legal. (Escrito de Apelación, pág. 2.)