ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| MOCA'S SWIMMING TEAM INC, AMISAEL TIRADO ROMAN, LESLIE CHICO ACEVEDO, y Otros<br><br>Parte Apelada<br><br><br>v.<br><br><br>MUNICIPIO AUTÓNOMO DE MOCA, SOCIEDAD LEGAL DE GANANCIALES VELEZ-MORO, EMANUEL PEREZ, y Otros<br><br>Parte Apelante | TA2025AP00298 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br><br>Caso Núm.: AG2025CV01307<br><br><br>Sobre: Injuction, Incumplimiento de Contrato, Violación de Derechos Civiles |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de septiembre de 2025.

Compareció ante este Tribunal la parte peticionaria, el Municipio de Moca (en adelante, el "Municipio" o "Peticionario"), mediante un mal denominado recurso de apelación y una "**Urgente Moción en Auxilio de Jurisdicción**" ambos presentados el 29 de agosto de 2025. Mediante su recurso, el Peticionario nos solicitó la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (en adelante, el "TPI"), el 28 de agosto de 2025. A través del aludido dictamen, el TPI declaró "No Ha Lugar" la "**Moción de Desestimación**" presentada por el Municipio. Así las cosas, el mismo 29 de agosto de 2025, emitimos una *Resolución* a través de la cual paralizamos los procedimientos ante el foro de instancia.

Por los fundamentos que expondremos a continuación*, expedimos* el auto de *certiorari* y *revocamos* la *Resolución* recurrida.

**I.**

El caso de epígrafe se originó el 31 de julio de 2025, con la presentación de una "**Demanda**" de interdicto provisional y permanente por parte de Moca's Swimming Team, Inc., Amisael Tirado Román, Leslie Chico Acevedo, la Sociedad Legal de Bienes Gananciales compuesta por ambos y en representación del menor de edad JTC, Jeannette Vélez Vélez, Pablo J. Moro, la Sociedad Legal de Bienes Gananciales compuesta por ambos y en representación del menor de edad VMV, Xiomara Vélez Soto, por sí y en representación de los menores RAHV y RAHV, Verónica Nieves Gonzales, Carlos Rivera, la Sociedad Legal de Bienes Gananciales compuesta por ambos y en representación de los menores de edad JCRN, CRN y ARN, Jefflee Abreu Alers, Emanuel Perez, la Sociedad Legal de Bienes Gananciales compuesta por ambos y en representación de los menores de edad APA e IPA, Nilsa Salas Perez, Miguel Acevedo Seguí, la Sociedad Legal de Bienes Gananciales compuesta por ambos y en representación del menor de edad AVAS, Zuheidy Flores Sosa, Juan Crespo Cortes, la Sociedad Legal de Bienes Gananciales compuesta por ambos y en representación del menor de edad FCF (en adelante, los "Recurridos"), en contra del Peticionario. Mediante la misma, alegaron que el Municipio es propietario de la piscina ubicada en el Parque La Moca, la cual, según manifestaron, fue diseñada y desarrollada de conformidad con las especificaciones de la Federación Internacional de Natación, hoy conocida como *World Aquatics*. Expresaron que dicha facilidad constituye la única piscina en el área noroeste con condiciones idóneas para la práctica de la natación competitiva.

Expusieron que el Moca's Swimming Team es una entidad sin fines de lucro, incorporada con el propósito de promover la natación y de desarrollar atletas de alto rendimiento. Señalaron que se encuentran afiliados a la Federación de Deportes Acuáticos de Puerto Rico y que sus entrenadores cuentan con las certificaciones exigidas por esa organización. Relataron que, durante veintitrés (23) años, el equipo sostuvo un acuerdo colaborativo con el Municipio en virtud del cual aportaba al

mantenimiento de la piscina mediante la compra de cloro, reparaciones básicas y limpieza.

Adujeron que, como parte de ese acuerdo, el Municipio les permitió utilizar la piscina de lunes a viernes de 4:00 p.m. a 7:00 p.m. y los sábados de 7:00 a.m. a 11:00 a.m. Señalaron que los entrenamientos se realizaban bajo la supervisión del entrenador, el Sr. Luis Miguel Juarbe Curbelo, quien posee una maestría en fisiología del ejercicio conferida por el Recinto Universitario de Mayagüez de la Universidad de Puerto Rico. Sostuvieron, además, que existía un programa de desarrollo mediante el cual el Municipio refería a menores para entrenamientos gratuitos. Indicaron que dicho acuerdo estuvo vigente hasta el 30 de junio de 2025.

Relataron que, no obstante lo anterior, el 23 de enero de 2025 se celebró una reunión entre el Sr. Anselmo Santiago (en adelante, el "señor Santiago"), en representación del alcalde de Moca, Hon. Efraín Franco Barreto, y los Recurridos, en la cual se les informó que la piscina cerraría el 15 de febrero de 2025. Expresaron que, posteriormente, el Moca's Swimming Team, representada por su presidenta Jeannette Vélez Vélez y otros integrantes, sostuvo una reunión con el alcalde y con funcionarios municipales como el señor Santiago y la Lcda. Evelyn Babilonia, administradora municipal. Alegaron que en esa ocasión el Municipio se comprometió a realizar reparaciones mínimas que no durarían más de una semana y que, una vez concluidas, se permitiría la reanudación de los entrenamientos en las condiciones que existían hasta ese momento.

Manifestaron que, en esa misma reunión, el Municipio advirtió sobre la posibilidad de un cierre mayor del Parque La Moca, sujeto a la asignación de fondos federales. Explicaron que ello no ocurrió por falta de desembolso. Relataron que, el 1 de julio de 2025, el Municipio citó a la directora del Moca's Swimming Team para la firma de una extensión del acuerdo, señalando la reunión para el 2 de julio de 2025. Expresaron que, al acudir ese día, se les informó que el alcalde no podía asistir por un imprevisto y que debía regresar al día siguiente. Alegaron que, tras entregar documentación adicional que nunca antes se les había solicitado, el señor

Santiago indicó que el acuerdo no se firmaría porque la piscina cerraría para remodelación. Expusieron que el Municipio nunca les proveyó una justificación oficial para mantener la piscina cerrada.

Adujeron que funcionarios municipales realizaron expresiones discriminatorias, refiriéndose al equipo como un "grupito de riquitos". Alegaron que tales manifestaciones, unidas a la negativa de continuar con el acuerdo, constituyen un patrón de discrimen por condición social. Alegaron que estas acciones interrumpieron el plan de entrenamiento de cara a los campeonatos de piscina corta de diciembre de 2025 y que, además, desalentaron a padres de niños principiantes, quienes desistieron de participar en las prácticas, lo que amenazó la continuidad del equipo como organización federada.

Sostuvieron que, mediante la reunión del 11 de febrero de 2025, el Municipio asumió un compromiso expreso con los Recurridos, lo que lo obligaba a permitir el uso de la piscina en los términos convenidos. Asimismo, alegaron que en esa misma reunión se configuró un contrato verbal entre las partes. Expresaron también que las actuaciones municipales constituyen violaciones a la Ley Núm. 131 de 13 de mayo de 1943, según enmendada, mejor conocida como "Ley de Derechos Civiles de Puerto Rico", la Constitución de Puerto Rico y a la Ley Núm. 338-1998, según enmendada, mejor conocida como la "Ley de la Carta de los Derechos del Niño" (en adelante, "Carta de los Derechos del Niño").

En vista de lo anterior, los Recurridos le peticionaron al Tribunal: (1) que se ordene la apertura y uso coordinado de la piscina en el horario de lunes a viernes de 4:00 p.m. a 7:00 p.m. y sábados de 7:00 a.m. a 11:00 a.m.; (2) que, de requerirse interrupciones por trabajos de mantenimiento o remodelación, estas se coordinen previamente y se garantice la reanudación del uso; (3) que se declare la validez del acuerdo alcanzado el 11 de febrero de 2025 o, en la alternativa, se reconozca la existencia de un contrato verbal en esa fecha; (4) que se establezca un itinerario de obras que minimice la suspensión de las prácticas; (5) que se ordene el pago al Moca's Swimming Team de no menos de cincuenta mil dólares

($50,000.00) por daños, más una cantidad adicional por lo menos igual en concepto de daños punitivos; (6) que se ordene el pago de compensaciones individuales a los menores identificados por no menos de veinte mil dólares ($20,000.00) cada uno, más daños punitivos equivalentes y sumas adicionales en virtud de la Carta de Derechos del Niños, *supra*; (7) que se condene al Municipio al pago de no menos de treinta mil dólares ($30,000.00) por núcleo familiar a favor de los padres demandantes, más daños punitivos en igual cuantía; (8) que se conceda una suma razonable en honorarios de abogado; y (9) que se condene al Municipio al pago de las costas del litigio.

Ese mismo día, los Recurridos presentaron una "**Moción Solicitando Orden de Entredicho Provisional**" en la que alegaron que el Municipio, representado por su alcalde, le había impedido el acceso a la piscina desde el 1 de julio de 2025. Manifestaron que ese cierre fue producto de expresiones de carácter discriminatorio y de actuaciones que calificaron como arbitrarias, irrazonables y sin fundamento legal. Expusieron que tal proceder privó a los menores recurridos del derecho a utilizar instalaciones públicas para la práctica organizada de la natación, actividad que describieron como esencial para su desarrollo competitivo, académico y personal. En consecuencia, solicitaron al TPI que, al amparo de la Regla 57.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 57, expidiera una orden de entredicho provisional dirigida al Municipio y a sus funcionarios para que se ordenara la apertura inmediata de la piscina y se coordinara con los Recurridos la reanudación de los entrenamientos en las condiciones previamente establecidas.

También presentaron una "**Moción Urgente Solicitando se Emita Interdicto Preliminar**" en la que solicitaron que el Tribunal ordenara al Municipio permitir el uso de la piscina del Parque La Moca en coordinación con los Recurridos y dentro del horario practicado hasta el 30 de junio de 2025. Indicaron que, de ser necesaria alguna interrupción, esta debía acordarse previamente y garantizar la reanudación del acceso una vez culminaran los trabajos. Asimismo, solicitaron que se declarara la validez

del contrato prometido en la reunión del 11 de febrero de 2025 o, en la alternativa, que se estableciera un itinerario de trabajos coordinado con los Recurridos para minimizar la suspensión de las prácticas.

Así las cosas, el 7 de agosto de 2025, los Recurridos radicaron una "**Moción Urgente Reiterando Solicitud de Interdicto Provisional**" en la que alegaron que el alcalde Efraín Franco Barreto difundió en la red social "Facebook" un video con expresiones falsas y difamatorias. Explicaron que en dicho material se afirmó, de manera incorrecta, que el Moca's Swimming Team era responsable del mantenimiento de las facilidades físicas de la piscina, cuando en realidad el acuerdo colaborativo sólo comprendía la compra y aplicación de químicos, con los gastos compartidos en un cincuenta por ciento (50%) entre las partes. Añadieron que el alcalde manifestó, además, que la facilidad sería objeto de mejoras para destinarla a actividades recreativas, desviando así su uso como espacio de entrenamiento estructurado en el deporte de la natación.

El 7 de agosto de 2025, el TPI emitió una *Resolución* en la que dispuso que no podía conceder los interdictos solicitados, sin antes conocer los detalles específicos relacionados con el cierre de la piscina por reparaciones. En consecuencia, citó a las partes a la celebración de una vista de *injunction* para el 19 de agosto de 2025.

Posteriormente, el 18 de agosto de 2025, el Municipio presentó una "**Moción de Desestimación**" mediante la cual alegó que el contrato número 2025-000059 fue cumplido cabalmente, toda vez que los Recurridos hicieron uso de la piscina hasta el 30 de junio de 2025, fecha en que expiró el referido acuerdo. Señaló que el 1 de julio de 2025 se notificó por escrito al entrenador Luis Miguel Juarbe la terminación del mismo y sostuvo que no existe, ni en la actualidad ni en los pasados veintitrés (23) años, resolución u ordenanza municipal que autorice un arrendamiento o colaboración como el que invocan los Recurridos.

Adujo que, en ausencia de la referida autorización legislativa municipal, los Recurridos carecían de legitimación activa y que, en consecuencia, no existía una relación jurídica que justificara la concesión

de un remedio. Arguyó, además, que para que un contrato gubernamental tenga vigencia y sea exigible, debe constar por escrito e inscribirse en el Registro de Contratos de la Oficina del Contralor de Puerto Rico, lo que no ocurrió en este caso. En vista de ello, el ayuntamiento planteó que no ha incumplido contrato alguno con los Recurridos y que, en estricto derecho, éstos no tienen causa de acción en su contra, por lo que procedía la desestimación de la "**Demanda**". Así las cosas, el 21 de agosto de 2025, el TPI dictó una *Orden* mediante la cual instruyó al alcalde a abstenerse de realizar cualquier gestión relacionada con la utilización de la piscina enclavada en el Parque La Moca, hasta tanto se resolviera la "**Moción de Desestimación**", bajo apercibimiento de desacato.

Posteriormente, el 26 de agosto de 2025, los Recurridos presentaron una "**Demanda Enmendada**" con el propósito de añadir una causa de acción al amparo de la Ley Núm. 28-2019, mejor conocida como "Carta de Derechos de los Niños, Niñas y Jóvenes Deportistas" (en adelante, "Ley Núm. 28-2019"). Ese mismo día radicaron una "**Moción Suplementaria en Oposición a Desestimación**" (en adelante, "Moción Suplementaria"), en la cual alegaron que la discreción del alcalde en la administración de los bienes municipales no puede ejercerse de forma arbitraria, sino que debe enmarcarse dentro de las disposiciones legales y constitucionales aplicables. Expusieron que la citada Ley Núm. 28-2019, *supra*, impone deberes específicos a los funcionarios municipales respecto al manejo de las facilidades deportivas y que la política pública vigente reconoce expresamente una serie de derechos a los menores atletas, cuya protección corresponde garantizar a los tribunales. Por último, manifestaron que existen hechos pertinentes que el Municipio admitió en su "**Moción de Desestimación**", por lo que solicitaron que la misma se declarara "No Ha Lugar".

El 27 de agosto de 2025, el TPI emitió una *Resolución Interlocutoria* en la que resolvió no considerar la *Moción Suplementaria* para fines de atender la "**Moción de desestimación**". Al día siguiente, el TPI dictó una *Resolución* mediante la cual declaró "No Ha Lugar" dicha "**Moción de**

**Desestimación**". En detalle, el foro *a quo* indicó que el Municipio debía comparecer a una vista de *injunction* preparado para sostener la aplicación estricta del requisito de contrato escrito y debidamente suscrito por las partes, mientras que los Recurridos debían justificar la alegación de discrimen como fundamento de su reclamación, a pesar de la ausencia de un contrato formal.

Inconforme con lo anteriormente resuelto, el Municipio acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló la comisión del siguiente error:

> **Erró el TPI, al abusar de su discreción al declarar No Ha Lugar la Moción de Desestimación presentada por la parte demandada-apelante a pesar de no haber ninguna relación jurídica entre las partes y habiéndose cumplido con las criterios de aplicación de las doctrinas jurídicas de Legitimación Activa ("Standing"), Separación de Poderes y Cuestión Política.**

El 4 de septiembre de 2024, los Recurridos presentaron su "**Oposición a Solicitud de *Certiorari*".

Con el beneficio de la comparecencia de ambas partes procedemos a resolver.

**II.**

**A.**

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, y su jurisprudencia interpretativa le confiere al demandado la oportunidad de presentar cualquiera de las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) que las alegaciones del demandante dejan de exponer una reclamación que justifique la concesión de un remedio; y (6) la falta de una parte indispensable. Comisión v. González Freyre *et al*, 211 DPR 579 (2023).

La moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, *supra*, es una defensa que formula el demandado antes de presentar su contestación a la demanda, en la cual solicita que se desestime la demanda presentada en su contra. Aut. Tierras v. Moreno & Ruiz Dev.

Corp., 174 DPR 409, 428 (2008); Colón v. Lotería, 167 DPR 625, 649 (2006). En general, la Regla 10.2 de Procedimiento Civil, *supra*, recoge defensas que pueden plantearse, a opción del demandado, en una moción de desestimación antes de contestar o en la misma contestación a la demanda. Casillas Carrasquillo v. ELA, 209 DPR 240, 247 (2022).

De igual forma, nuestro más alto foro ha establecido que:

> [A] los fines de disponer de una moción de desestimación, estamos obligados a dar por ciertas y buenas todas las alegaciones fácticas de la demanda presentada. Para prevalecer, el promovente de la moción tiene que demostrar que, aun así, la demanda no expone una reclamación que justifique la concesión de un remedio. Esta doctrina se aplica solamente a los hechos bien alegados y expresados de manera clara y concluyente, que de su faz no den margen a dudas. Pressure Vessels PR v. Empire Gas PR, 137 DPR 497, 505 (1994).

Sobre este asunto, el Dr. José Cuevas Segarra expone que "[e]n la moción de desestima[ción] no se trata de poner en duda los hechos alegados en la demanda, sino atacarla por un vicio intrínseco, por ejemplo: insuficiencia, ausencia de parte indispensable, [o] falta de jurisdicción". J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Publicaciones JTS, San Juan, Tomo I, 2000, pág. 275.

En fin, "la demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación". Pressure Vessels PR. v. Empire Gas P.R., *supra*, pág. 505. Consecuentemente, se debe considerar si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida. El Día, Inc. v. Mun. de Guaynabo, 187 DPR 811, 821 (2013); Consejo Titulares v. Gómez Estremera, 184 DPR 407, 423 (2012).

Relacionado con lo anterior, la jurisprudencia ha identificado casos que contienen elementos subjetivos, de intención, propósitos mentales o negligencia. A saber, "controversias en las que el factor credibilidad juega un papel esencial, si no decisivo, para llegar a la verdad, y donde un litigante depende en gran parte de lo que extraiga del contrario en el curso de un juicio vivo". Rosario Ortiz v. Nationwide Mutual Insurance Co., 158

DPR 775, 780-81 (2003). A esos efectos, "la privación a un litigante de su 'día en corte' es una medida procedente sólo en casos extremos y que debe usarse solamente en casos claros". Íd., pág. 780.

**B.**

Los preceptos legales que regulan la contratación municipal responden a un interés público de primer orden, pues persiguen garantizar la recta administración de los fondos públicos y proteger los recursos fiscales de la ciudadanía. Hatton v. Mun. Ponce, 134 DPR 1001, 1005 (1994). En virtud de ese interés, la validez de los contratos celebrados con los municipios no se determina conforme a las reglas generales de los contratos civiles, sino a través de un régimen especial diseñado por el legislador. ALCO Corp. v. Mun. de Toa Alta, 183 DPR 530, 537 (2011).

Así pues, el Artículo 2.014 de la Ley Núm. 107-2020, según enmendada, mejor conocida como el "Código Municipal de Puerto Rico", dispone los requisitos que deben observarse al momento de otorgar contratos o acuerdos municipales, incluyendo aquellos dirigidos a cumplir cualquier fin público autorizado por dicho estatuto o por cualquier otro aplicable. 21 LPRA sec. 7174. Específicamente, exige que el acuerdo conste por escrito y esté suscrito por todas las partes, que su vigencia sea únicamente prospectiva sin cláusulas de renovación automática, que se identifique expresamente la partida presupuestaria que lo sufragará, que en los casos de servicios profesionales cumpla con la Ley Núm. 237-2004, mejor conocida como la "Ley para Establecer Parámetros Uniformes en los Procesos de Contratación de Servicios Profesionales y Consultivos para las Agencias y Entidades Gubernamentales del ELA", y que se observe cualquier otro requisito que imponga la ley. Íd. Del mismo modo, dispone que todo contrato se registre en la Oficina del Contralor y que el municipio mantenga un expediente fiel y actualizado de todos los contratos y enmiendas otorgados. Íd.

Nuestro Tribunal Supremo ha reconocido que el cumplimiento estricto de estos requisitos funciona como un mecanismo de control para prevenir irregularidades, pagos indebidos y reclamaciones fraudulentas,

garantizando la transparencia y el orden cronológico de las contrataciones públicas. ALCO Corp. v. Mun. de Toa Alta, *supra*, pág. 537-538; Ocasio v. Alcalde Mun. de Maunabo, 121 DPR 37, 53–54 (1988); Asimismo, ha destacado que la exigencia de que el contrato conste por escrito no es un mero formalismo, sino una condición sustantiva que asegura la mejor evidencia de las obligaciones asumidas y protege a ambas partes frente a posibles controversias. Colón Colón v. Mun. Arecibo, 170 DPR 718, 726 (2007). Por ello, todo contrato o acuerdo que se ejecute o suscriba en contravención con dichos requisitos será nulo y no tendrá efecto jurídico alguno. *Véase*, Art. 2.014 del Código Municipal, 21 LPRA sec. 7174.

De igual manera, nuestro máximo foro judicial ha advertido que toda reclamación fundada en acuerdos carentes de estos requisitos debe evaluarse con especial cautela, pues únicamente el cumplimiento cabal otorga fuerza vinculante y exigibilidad a los contratos municipales. Ocasio v. Alcalde Mun. de Maunabo, *supra*, pág. 54. Incluso, se ha reiterado que ningún municipio puede requerir la prestación de servicios sin certificar previamente que el contrato fue reducido a escrito, debidamente registrado y remitido al Contralor, conforme lo exige la ley. ALCO Corp. v. Mun. de Toa Alta, *supra*, pág. 538.

Por último, es menester destacar que no resulta permisible que personas privadas invoquen remedios en equidad frente a los municipios con los que contratan, ya que "es doctrina reiterada que dichos remedios no se aplicarán cuando resulten contrarios a una clara política pública plasmada en un estatuto o en la Constitución" Mun. Quebradillas v. Corp. Salud Lares, 180 DPR 1003, 1020 (2011).

**B.**

La Sección 1 del Artículo II de la Constitución de Puerto Rico dispone, en lo pertinente, que no se permitirá "discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas". Const. PR, LPRA, Tomo 1, ed. 2016, pág. 275. La inserción de estas categorías en el texto constitucional respondió a la necesidad de proscribir clasificaciones fundamentadas en circunstancias inherentes a la

persona, ajenas a su voluntad y consustanciales a la naturaleza humana, como lo son la raza, el sexo, el origen y la condición social. Garib Bazaín v. Hosp. Aux. Mutuo *et al.*, 204 DPR 601, 615 (2020). En ese sentido, la Carta de Derechos de nuestra Carta Magna pretende impedir que dichas distinciones se utilicen como criterio para marginar, excluir o restringir derechos. Íd.

Particular atención merece la categoría de origen o condición social. Nuestra jurisprudencia ha reconocido que esta expresión se refiere principalmente a distinciones de carácter económico y social. Garib Bazaín v. Hosp. Aux. Mutuo *et al.*, *supra*, pág. 617. Así lo reiteró el Tribunal Supremo en Pérez Román v. Proc. Esp. Rel. de Fam., 148 DPR 201, 217 (1999), al resolver que una clasificación entre parejas casadas y no casadas no constituía discrimen por condición social, destacando que la prohibición constitucional no abarca toda diferencia, sino aquellas desigualdades que tienen como fundamento la situación económica o la posición de un individuo dentro de la estructura social.

Si bien la Convención Constituyente no definió con exactitud el alcance de la expresión "condición social", las discusiones que allí se suscitaron evidencian que la preocupación principal era garantizar la igualdad de trato, independientemente de la extracción social o la situación económica de la persona. Diario de Sesiones de la Convención Constituyente, pág. 1382; Garib Bazaín v. Hosp. Aux. Mutuo *et al.*, *supra*, pág. 618. En dichas deliberaciones se dejó claro que el propósito de esta disposición era asegurar que todos los ciudadanos fueran considerados iguales ante la ley, sin importar su posición dentro de la comunidad o el nivel de recursos de que dispusieran. Íd. Asimismo, se concluyó que la exclusión expresa del término "posición económica" en el texto final no suponía una limitación, puesto que dicha categoría quedaba comprendida dentro de la noción más amplia de "condición social". Diario de Sesiones de la Convención Constituyente, pág. 2245; Garib Bazaín v. Hosp. Aux. Mutuo *et al.*, *supra*, pág. 618.

De lo anterior se desprende que la prohibición de discrimen por condición social comprende primordialmente aquellas actuaciones que tienen como efecto establecer desigualdades basadas en criterios socioeconómicos, tales como el nivel de ingreso, los recursos materiales o la extracción social de las personas. La norma constitucional pretende impedir que tales factores se utilicen como mecanismo para otorgar privilegios indebidos, imponer cargas irrazonables o excluir a ciertos individuos del acceso a oportunidades, beneficios o servicios.

**C.**

La Ley Núm. 28-2019, *supra*, constituye una de las más recientes iniciativas legislativas en Puerto Rico para atender la realidad de la niñez y la juventud en el ámbito deportivo. Conforme a su Exposición de Motivos, este estatuto tiene como finalidad asegurar un acceso inclusivo al deporte, erradicar toda práctica discriminatoria y garantizar condiciones apropiadas que permitan a los menores desarrollarse plenamente mediante la actividad física organizada. *Véase*, Exposición de Motivos de la Ley Núm. 28-2019. El legislador enfatizó que la práctica deportiva en edades tempranas no puede centrarse en la obtención de resultados inmediatos, sino en la enseñanza de valores, la protección de la dignidad y el disfrute de los participantes. Íd.

En esa dirección, el Artículo 3 de la referida Ley establece la política pública aplicable, disponiendo que el Estado velará porque los menores entre cuatro (4) y dieciocho (18) años gocen de: (1) seguridad en su participación deportiva, (2) acceso libre y voluntario, (3) oportunidades para alcanzar su máximo desarrollo en la disciplina de su preferencia, (4) prácticas deportivas sanas y responsables, (5) promoción activa de la integración juvenil en el deporte y (6) eliminación de toda barrera discriminatoria que limite su acceso. 15 LPRA sec. 973.

De forma complementaria, el Artículo 4 de dicha pieza legislativa recoge un listado de derechos que protegen a los menores en el ámbito deportivo y recreativo. Entre ellos se incluyen: la facultad de practicar la disciplina de su preferencia con propósitos de esparcimiento e integración

social; el derecho a ser tratados con dignidad y respeto; a competir en categorías que correspondan a su capacidad física, destreza y nivel de madurez; a gozar de igualdad de oportunidades dentro de la disciplina elegida; y a desarrollarse en entornos seguros y saludables. 15 LPRA sec. 974. Asimismo, se les garantiza recibir una preparación y entrenamiento adecuados; participar en las decisiones relacionadas con su práctica; vivir experiencias deportivas acordes con su etapa de crecimiento y no con exigencias propias del mundo adulto; disponer de instalaciones apropiadas y equipamiento suficiente; y contar con la instrucción de entrenadores debidamente capacitados. Íd. Igualmente, se reconoce su derecho a un ambiente inclusivo, pacífico y libre de violencia, así como a condiciones que salvaguarden tanto su seguridad física como emocional. Íd. También se asegura su participación voluntaria e igualitaria, sin presiones externas, en un deporte libre de sustancias dañinas y en competencias con reglas justas para todos. Íd.

En suma, la Ley Núm. 28-2019, *supra*, constituye un marco normativo robusto que reconoce y asegura la práctica deportiva de niños y jóvenes como un derecho amparado por la ley. Su alcance obliga tanto al Estado como a las instituciones deportivas a garantizar el acceso efectivo a las facilidades, la eliminación de toda forma de discrimen y la promoción de un entorno que favorezca la formación integral de los niños, niñas y jóvenes deportistas de Puerto Rico. El incumplimiento con las disposiciones de la ley le reconoce al Departamento de Recreación y Deportes la autoridad para imponer las sanciones que se dispusieran por vía reglamentaria.

**D.**

En nuestro ordenamiento jurídico se ha reconocido que la declaración unilateral de voluntad constituye una fuente legítima de obligaciones. Ramírez Ortiz v. Gautier Benítez, 87 DPR 497 (1963); Ortiz v. P.R. Telephone, 162 DPR 715 (2004). El Tribunal Supremo de Puerto Rico la ha conceptualizado como la promesa o manifestación unilateral mediante la cual una persona se impone, por sí sola, la obligación firme de

dar, hacer o no hacer algo en beneficio de otra, generando para esta última el derecho de exigir su cumplimiento o de reclamar indemnización por los daños que se deriven de su incumplimiento. Ramírez Ortiz v. Gautier Benítez, *supra*, pág. 508.

De acuerdo con dicha doctrina, una persona puede obligarse válidamente a favor de otra, siempre que posea la capacidad legal para obligarse, lo haga mediante un acto jurídico idóneo y dicho acto no resulte contrario a la ley, la moral ni al orden público. 31 LPRA sec. 10781. Nuestro máximo foro judicial ha subrayado que, siempre que concurran estas condiciones, nada impide que un individuo plenamente capaz se vincule jurídicamente únicamente mediante su propia y firme declaración de voluntad unilateral, obligándose a dar, hacer o abstenerse de hacer algo posible en beneficio de otro. Ramírez Ortiz v. Gautier Benítez, *supra*, págs. 521–522. Cabe señalar que, tratándose de una obligación unilateral sin causa típica o contraprestación, en ocasiones de naturaleza benéfica, su cumplimiento puede tornarse oneroso para el promitente. Íd. pág. 521. De ahí que se exija que la declaración provenga de un acto jurídico válido, revestido de certeza tanto en su forma como en su contenido. íd.

De la jurisprudencia se desprende que para que la declaración unilateral de voluntad adquiera fuerza vinculante deben concurrir los siguientes elementos: (1) la sola voluntad de quien se obliga; (2) que el declarante cuente con capacidad legal suficiente; (3) que exista una intención clara e inequívoca de obligarse; (4) que la obligación tenga un objeto definido; (5) que se garantice certeza sobre la forma y el contenido de la declaración; (6) que esta surja de un acto jurídico idóneo; y (7) que su contenido no sea contrario a la ley, la moral o el orden público. Ortiz v. P.R. Telephone, *supra*, pág. 725–726. Así, una vez emitida con sujeción a los requisitos correspondientes, la declaración unilateral produce efectos vinculantes para el promitente desde el momento de su exteriorización, quedando este obligado a su cumplimiento desde que la declaración es conocida por el público. 31 LPRA sec. 10782.

**III.**

En el presente caso, el Municipio nos solicitó que revoquemos la *Resolución* del TPI en la que se declaró "No Ha Lugar" su "**Moción de Desestimación**".

Como único señalamiento de error esgrimido, el Peticionario alega que el Tribunal erró al denegar dicha solicitud, pese a la inexistencia de vínculo jurídico entre las partes y a que se habían satisfecho los criterios pertinentes para la aplicación de las doctrinas de legitimación activa, separación de poderes y cuestión política. Veamos.

Del expediente ante nuestra consideración se desprende que el 31 de julio de 2025 los Recurridos presentaron una "**Demanda**" contra el Municipio de Moca, alegando discrimen por condición social, los presuntos daños derivados de dicho discrimen, los daños por el incumplimiento de una promesa de contrato y por violación a las disposiciones a la Ley Núm. 28-2019, *supra* y de la "Carta de Derechos del Niño". A la luz de lo anterior, peticionaron la emisión de un interdicto preliminar y permanente en contra del ayuntamiento. Luego de múltiples trámites procesales, el Municipio radicó una "**Moción de Desestimación**", la cual fue declarada "No Ha Lugar" mediante *Resolución* del 28 de agosto de 2025. En síntesis, el TPI entendió que correspondía celebrar una vista evidenciaria de *injunction* para dilucidar, de un lado, si debía aplicarse estrictamente el requisito de contrato escrito y debidamente suscrito, y de otro, si las alegaciones de discrimen podían sostener la reclamación aun en ausencia de dicho contrato. Asimismo, el foro *a quo* ordenó la comparecencia del alcalde de Moca, Hon. Efraín Franco Barreto, y de otros funcionarios municipales bajo apercibimiento de desacato e instruyó a los Recurridos a presentar testigos que sustenten las alegaciones de discrimen, prefiriéndose, en la medida de lo posible, que los menores permanezcan en la escuela durante el proceso.

Conforme adelantáramos en los acápites anteriores, la validez de los contratos municipales no se examina conforme a las normas generales de los contratos civiles, sino bajo un régimen especial delineado por el legislador. <u>ALCO Corp. v. Mun. de Toa Alta</u>, *supra*, pág. 537. El Código

Municipal de Puerto Rico, *supra*, exige que todo contrato o acuerdo en que comparezca un municipio en nuestra jurisdicción conste por escrito y esté suscrito por todas las partes, que tenga vigencia prospectiva sin cláusulas de renovación automática, que se identifique expresamente la partida presupuestaria correspondiente, que en los casos de servicios profesionales cumpla con la Ley Núm. 237-2004, *supra*, y que observe cualquier otro requisito legal aplicable. 21 LPRA sec. 7174. Además, todo contrato debe inscribirse en la Oficina del Contralor y el municipio debe mantener un expediente actualizado con sus contratos o acuerdos y sus respectivas enmiendas. Íd. El incumplimiento con cualquiera de estos requisitos supondrá la nulidad del contrato o acuerdo de que se trate. Íd.

Asimismo, nuestra Constitución prohíbe el discrimen por condición social, entendido como distinciones de índole económica o social. Garib Bazaín v. Hosp. Aux. Mutuo et al., *supra*, pág. 617. El propósito de esta disposición constitucional es garantizar que todos los ciudadanos sean considerados iguales ante la ley, sin importar su posición en la comunidad ni el nivel de recursos de que dispongan. Por su parte, la Ley Núm. 28-2019, *supra*, promueve un acceso deportivo inclusivo y libre de discrimen, asegurando a los menores condiciones dignas y seguras para su desarrollo integral. *Véase*, Exposición de Motivos de la Ley Núm. 28-2019. Mientras que la Ley de la "Carta de Derechos del Niño", según enmendada, es una compilación general no exhaustiva de los derechos que le son reconocidos a los niños en Puerto Rico y de otros derechos que tienen como miembros de la familia y la comunidad, y les reconoce la potestad de acudir ante los tribunales del país para reclamar cualquier beneficio establecido o para que se suspenda cualquier actuación que contravenga sus disposiciones. 1 LPRA sec. 414.

Luego de un examen minucioso del expediente ante nuestra consideración, incluyendo la "**Demanda Enmendada**", la "**Moción de Desestimación**", su correspondiente *Oposición* y la *Resolución* recurrida, concluimos que procedía acoger la postura del Municipio y desestimar las

causas de acción que incoaron los Recurridos en su contra. Nos explicamos.

En el caso de autos, Moca's Swimming Team mantuvo por veintitrés (23) años cierto acuerdo con el Municipio que les permitía el uso de la piscina en un horario específico. **No existe controversia alguna de que dicho contrato venció el 30 de junio de 2025, sin que conste en autos renovación alguna por escrito que cumpla con el restante de las formalidades legales requeridas, en cuanto a la contratación municipal se refiere**. Así lo reconocieron expresamente los Recurridos en su "**Demanda Enmendada**". Por consiguiente, al presente no existe contrato o acuerdo vigente que conceda al equipo el derecho a utilizar la instalación municipal en controversia.

Cabe recordar que la normativa sobre contratación municipal exige **<u>estrictamente</u>** que los contratos o acuerdos que otorguen los ayuntamientos de Puerto Rico consten **<u>por escrito</u>**, por lo que no resultan exigibles promesas verbales, acuerdos implícitos ni declaraciones unilaterales de voluntad. Reconocer lo contrario equivaldría a no respetar la voluntad del legislador, según consignada en el Código Municipal, *supra*, ni la norma pautada consistentemente por el Tribunal Supremo, pues se estaría validando un contrato o acuerdo nulo e inexistente. Fíjese que, en la "**Demanda Enmendada**", no se le imputa un incumplimiento al Municipio por actos realizados durante la vigencia del acuerdo que venció el 30 de junio de 2025; todo lo contrario, se le solicitó al TPI que declare la validez de un presunto acuerdo verbal del 11 de febrero de 2025.

En vista de lo anterior, no existe cabida en nuestro ordenamiento jurídico la reclamación que presentaron los Recurridos en contra del Municipio por incumplimiento contractual y los alegados daños sobrevenidos a raíz de dicho incumplimiento. Establecido lo anterior, y a poco que examinemos las alegaciones consignadas en la "**Demanda Enmendada**", observamos que las reclamaciones por las alegadas actuaciones discriminatorias imputadas a empleados municipales, así como aquellas sustentadas en la Ley Núm. 28-2019, *supra* y en la Carta de

Derechos del Niño, *supra*, se encuentran indivisiblemente atadas a la existencia del supuesto acuerdo verbal y/o promesa de contrato habido entre las partes.

Por tanto, al no tener cabida en nuestro acervo legal acuerdos verbales y/o implícitos ni declaraciones unilaterales de voluntad, en las que presuntamente intervenga un municipio, dichas causas de acción también resultan insostenibles en derecho. Pretender lo contrario supondría imponer a los ayuntamientos obligaciones tácitas no contempladas por nuestro ordenamiento jurídico y contrarias a los principios de responsabilidad fiscal y los límites que el legislador ha impuesto en materia de contratación pública. A la luz de lo previamente expuesto, discrepamos de la determinación emitida por el foro *a quo* y concluimos que, dadas las circunstancias del presente caso, en las que es patente la inexistencia de un contrato válido, procedía conceder el remedio solicitado por el Municipio en su "**Moción de Desestimación**".

En suma, examinada la "**Demanda Enmendada**" de la forma más favorable para los Recurridos, resolvemos que procedía la desestimación de las causas de acción incoadas por éstos en contra del ayuntamiento.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, *expedimos* el auto de *certiorari* presentado y *revocamos* la *Resolución* recurrida.

En consecuencia, se desestima, con perjuicio, la "**Demanda Enmendada**" presentada por los Recurridos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones